THE STATE, EX REL. SPANGLER CANDY COMPANY, APPELLANT, *v.* INDUSTRIAL COMMISSION OF OHIO, APPELLEE.

[Cite as State, ex rel. Spangler Candy Co., *v.* Indus. Comm. (1988), 36 Ohio St. 3d 231.]

(No. 87-159—Decided May 11, 1988.)

232

*Baker & Hostetler* and *Stephen J. Habash,* for appellant.

*Anthony J. Celebrezze, Jr.,* attorney general, and *Gerald H. Waterman,* for appellee.

*Per Curiam.* The first issue before this court is whether the commission improperly allowed an award for permanent partial disability based on the

unallowed condition of an aggravation of the herpetic condition of the left eye caused by the injury of "foreign body left eye." Appellant urges that the commission recognized an entirely new medical condition in awarding permanent partial disability. Further, appellant argues the order of the commission denied it due process inasmuch as it was not permitted to dispute the finding based upon the new medical condition.

The appropriate standard to determine whether a pre-existing disease was accelerated by an injury and is therefore compensable is set forth in *Swanton* v. *Stringer* (1975), 42 Ohio St. 2d 356, 71 O.O. 2d 325, 328 N.E. 2d 794. In that case, this court held, in part, in paragraph one of the syllabus, that:

"a. A disabling condition, resulting from a pre-existing disease and claimed to have been accelerated by an injury in the course of and arising out of employment, is compensable under the Workmen's Compensation Act, where it is established that such disability was accelerated by a substantial period of time as a direct and proximate result of such injury."

Clearly, appellant was aware of claimant's pre-existing herpetic condition. In disputing claimant's application for permanent partial disability, Spangler, in a letter dated November 4, 1983, noted that claimant had "a history of herpetic infections in both eyes. The employer questions sight loss as a result of the herpetic infections as opposed to a foreign body in the eye."

The medical testimony was provided by two doctors. Dr. Thomas W. Bennett ultimately concluded that "* * * this presumed viral flare-up was stimulated by the episode related to the foreign body. I think it only fair, then, to assume that the reported foreign body was the proximal cause of the difficulty * * *."

Dr. Bennett, in another letter, noted that "* * * the treatment Mr. Dunkel received in October 1981 was related to the reported foreign body in the left eye, even though it may have been caused by a viral reaction. * * * I think it would be reasonable to assume that with the course of treatments through the end of 1981 the viral inflammation had been activated by the foreign body and that for my treatment from July 1982 the flare-ups cannot be traced directly to the foreign body."

A second medical expert, Dr. Richard Koop, noted in his "Report of Special Eye Examination" that:

"It is my finding at this time that the patient does have significantly reduced vision in the left eye which is secondary to a central corneal scar of moderate degree. The etiology of the central corneal scar left eye is quite probably related to the history of herpes involvement of the central cornea. The probability of the herpes being aggravated by a foreign body or corneal abrasion is my impression from the history."

Further, in an interview memo, a commission employee noted that Dr. Koop provided the further information that he believed the visual efficiency of the claimant prior to the injury was at sixteen percent and the efficiency after the injury was at three to five percent. The memo also contains the information that probably only one-half of the loss of visual efficiency might be attributable to the injury.

The order of the district hearing officer did not discuss whether the pre-existing disease was aggravated by the allowed condition. Rather, the order concentrated only on whether claimant had suffered a percentage loss permitted by statute. The order denied claim-

ant an award of permanent partial disability *only* on the basis that he had experienced an eleven to thirteen percent actual loss of vision. Because this vision loss was less than the permitted twenty-five percent as specified in R.C. 4123.57(C), the district hearing officer determined that the award should be denied.

The commission reversed the decision of the hearing officer on the basis first that the injury aggravated a pre-existing condition of the left eye and also that the practical loss of vision was 68.75 percent.

In applying the standards of *Swanton, supra*, it is clear that the claimant had a disabling condition. This condition resulted from the worsening of a pre-existing disease. The issue, therefore, is whether this condition was accelerated by the allowed injury of "foreign body left eye" and whether the disability was accelerated by a substantial period of time as a direct and proximate result of the injury.

In determining whether a claimant has established that a disability was accelerated by a substantial period of time as a direct and proximate result of an allowed injury the commission need only have some evidence that the disability was accelerated.

The report of Dr. Koop is some evidence that the pre-existing disease was aggravated and the disability was accelerated by the allowed condition. Koop noted that "[t]he probability of the herpes being aggravated by a foreign body or corneal abrasion is my impression from the history. I do not feel that the corneal foreign body of and by itself would have caused this degree of scarring." This determination is subject to correction by action in mandamus only upon a showing of an abuse of discretion. *State, ex rel. Haines*, v. *Indus. Comm.* (1972), 29 Ohio St. 2d 15, 58 O.O. 2d 70, 278 N.E. 2d 24. It

cannot be said that, on the basis of the record before it, the commission's order in question was for a condition not allowed in the claim. *State, ex rel. Internatl. Harvester Co.*, v. *Indus. Comm.* (1975), 43 Ohio St. 2d 40, 72 O.O. 2d 23, 330 N.E. 2d 660. To this extent, the judgment of the court of appeals is affirmed.

We must next determine whether the commission abused its discretion by calculating claimant's vision loss as being 68.75 percent. R.C. 4123.57(C) allows recovery for permanent partial loss of sight only where the amount of vision loss is twenty-five percent or greater. Appellant calculates the percentage by subtracting the percentage of vision remaining from the percentage of vision which a claimant originally had. In this case, appellant calculates claimant's vision loss as eleven percent. Therefore, according to appellant, because claimant's vision loss was less than twenty-five percent, the claimant is not able to receive an award for permanent partial loss of sight of an eye. Appellant relies on the case of *State, ex rel. Nastuik*, v. *Indus. Comm.* (1945), 145 Ohio St. 287, 30 O.O. 503, 61 N.E. 2d 610.

In *Nastuik*, this court held, in paragraph one of the syllabus, that:

"An employee is not entitled to workmen's compensation for the loss of the sight of an eye through injury sustained in the course of and arising out of his employment, *where he was industrially blind in that eye before the injury.*" (Emphasis added.)

R.C. 4123.57(C) (now [B]) provides, in pertinent part, that:

"For the permanent partial loss of sight of an eye, such portion of one hundred twenty-five weeks as the commission may in each case determine, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case

shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. 'Loss of uncorrected vision' means the percentage of vision actually lost as the result of the injury or occupational disease."

The predecessor of R.C. 4123.57 (C) discussed in *Nastuik*, G.C. 1465-80, did not contain the term "uncorrected vision."

The premise of paragraph one of the syllabus in *Nastuik* is that industrial blindness in an eye before injury precludes recovery. The insertion by the General Assembly of the term "uncorrected vision" indicates a rejection of that premise. `

The commission calculated claimant's percentage of vision loss by deducting the amount of vision remaining in the eye from the percentage of vision claimant had before the allowed injury. The commission concluded that claimant lost eleven-sixteenths of his pre-injury uncorrected vision of sixteen percent, which equated to a 68.75 percent loss of vision and, therefore, claimant was entitled to an award based on this percentage loss.

The commission is vested with the authority to interpret and implement legislation passed by the General Assembly. R.C. 4123.95 dictates that workers' compensation legislation shall be liberally construed in favor of employees. Therefore, the commission did not abuse its discretion in determining that, for purposes of R.C. 4123.57(C), the percentage of permanent partial loss of sight of an eye is calculated by subtracting the amount of vision remaining from the amount of vision existing prior to the injury and taking the percentage of the loss of sight as the calculation of actual vision loss.

However, appellant does raise the issue that there is no evidence to support the conclusion of the commission that the entire vision loss, 68.75 percent, was attributable to the allowed injury. The only evidence of vision loss percentages was provided by Dr. Koop. While that report is some evidence that vision loss occurred due to the allowed injury, an interview memo based on a conversation with Dr. Koop also reveals that he indicated that "probably only ½ might be attributable to the injury." Dr. Bennett's reports do not indicate any percentage of vision loss. Therefore, the medical evidence revealed that only half of the vision loss could be attributable to the allowed injury and the commission did abuse its discretion in holding that the entire amount of vision loss, 68.75 percent, was attributable to the injury. To this extent, the judgment of the court of appeals is reversed.

The judgment of the court of appeals is affirmed in part and reversed in part, and a limited writ is issued to the commission with instructions to reduce by one-half the compensation awarded to claimant for a loss of vision.

*Judgment affirmed in part,*
*reversed in part and*
*limited writ allowed.*

MOYER, C.J., SWEENEY, LOCHER, HOLMES, DOUGLAS and H. BROWN, JJ., concur.

WRIGHT, J., concurs in judgment only.