### The STATE ex rel. PARSEC, INC.

#### v.

#### AGIN et al.

[Cite as *State ex rel. Parsec, Inc. v. Agin,* 155 Ohio App.3d 303, 2003-Ohio-6186.]

Court of Appeals of Ohio,
Tenth District, Franklin County.

No. 03AP–165.

Decided Nov. 20, 2003.

Frost Brown Todd, L.L.C., and Noel C. Shepard, for relator.

Perry–Dieterich & Associates and Eric R. Dieterich, for respondent Jamie C. Agin.

Jim Petro, Attorney General, and William J. McDonald, Assistant Attorney General, for respondent Industrial Commission of Ohio.

KLATT, Judge.

{¶ 1} Relator, Parsec, Inc., has filed this original action in mandamus requesting this court to issue a writ ordering respondent, Industrial Commission of Ohio ("commission"), to vacate its order granting to respondent, Jamie C. Agin ("claimant"), an award for the total loss of vision in his left eye and to enter an order denying said compensation.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 12(M) of the Tenth District Court of Appeals, this case was referred to a magistrate of this court to conduct appropriate proceedings. The magistrate has rendered a decision, including findings of fact and conclusions of law, and has recommended that this court deny relator's request for a writ of mandamus (attached as Appendix A). The magistrate noted that the medical evidence in the record clearly established that the work-related injury caused a traumatic cataract to occur in claimant's left eye resulting in the complete loss of vision in that eye. There was no dispute that, in order to treat claimant's work-related injury and to restore vision in his left eye, it was necessary to remove claimant's cornea and implant an artificial one. Therefore, the magistrate concluded that the evidence showed that claimant sustained a total loss of vision in his left eye. Citing *State ex rel. Kroger Co. v. Stover* (1987), 31 Ohio St.3d 229, 31 OBR 436, 510 N.E.2d 356, the magistrate noted:

"The improvement of vision resulting from a corneal transplant is a correction to vision and thus, shall not, on the current state of the medical art, be taken into consideration in determining the percentage of vision actually lost pursuant to R.C. 4123.57(C)." Id. at paragraph two of the syllabus.

{¶ 3} No objections have been filed to the recommendation of the magistrate.

{¶ 4} Finding no error or other defect on the face of the magistrate's decision, we adopt the decision of the magistrate as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, the requested writ of mandamus is denied.

Writ denied.

LAZARUS and BROWN, JJ., concur.

**APPENDIX A**

MAGISTRATE'S DECISION

Rendered on July 16, 2003

IN MANDAMUS

{¶ 5} Relator, Parsec, Inc., has filed this original action requesting that this court issue a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order that granted to respondent Jamie C. Agin ("claimant") an award for the total loss of vision of his left eye. Relator requests that the commission be ordered to deny claimant the award.

Findings of Fact

{¶ 6} 1. Claimant sustained a very serious work-related injury on January 14, 2002, when he was struck in the left eye with a wire, which caused intraocular penetration. Claimant's claim has been allowed for "abrasion left cornea; penetrating wound of orbit with foreign body, left; ocular laceration with prolapse or exposure of intraocular tissue, left; total traumatic cataract, left; vitreous membranes and strands, left."

{¶ 7} 2. Claimant was seen at Grant/Riverside Methodist Hospital, and the hospital records indicate the following:

{¶ 8} "Clinical evaluation showed that there was a central corneal laceration which is leaking aqueous humor. The anterior chamber is formed, but there is some shallowing with some anterior bowing of the iris. There is a defect in the left lens capsule medially with opacification of the lens. It is difficult to visualize any of the structures of the retina. The patient understands that the optimal treatment for this problem now includes repair of the cornea so that it does not

leak, removal of the traumatized lens, implantation of intraocular lens implant if possible, and possible need for vitreous surgery."

{¶ 9} 3. Dr. Kenneth V. Cahill, M.D., performed the surgery to repair claimant's injured eye. The surgery included the removal of the lens and the insertion of a "three-piece silicone intraocular lens." Following the surgery, claimant's recovery has been remarkably successful. According to the September 18, 2002 report of George F. Calloway, Jr., M.D., claimant has corrected visual acuity of 20/25 in the left eye. The injury did result in a total traumatic cataract of the left eye.

{¶ 10} 4. Claimant filed a motion asking that he be awarded total loss of vision of his left eye pursuant to R.C. 4123.57(B), formerly 4123.57(C), and *State ex rel. Kroger Co. v. Stover* (1987), 31 Ohio St.3d 229, 31 OBR 436, 510 N.E.2d 356. Claimant also submitted C–9 forms from Dr. Cahill.

{¶ 11} 5. Claimant's motion was heard before a district hearing officer ("DHO") on November 26, 2002, and resulted in an order granting the compensation as follows:

{¶ 12} "The injured worker is awarded a scheduled loss of use award for a total loss of vision, left eye. This award shall be paid pursuant to [R.C.] 4123.57(C) with the start date as the date of the loss, 01/14/2002.

{¶ 13} "The District Hearing Officer finds, pursuant to the holding in *Kroger v. Stover*. The injured worker sustained a total loss of his natural or uncorrected vision on 01/14/2002 as a result of his accident. The fact that his vision was subsequently surgically corrected is not properly to be considered in permanent partial disability awards.

{¶ 14} "This order is based on the report of Dr. Cahill, 01/14/2002."

{¶ 15} 6. Relator appealed, and the matter was heard before a staff hearing officer ("SHO") on January 14, 2003. The SHO affirmed the prior DHO order as follows:

{¶ 16} "The Staff Hearing Officer concurs with the District Hearing Officer's finding that, pursuant to the holding in *Kroger v. Stover*, the injured worker sustained a total loss of his natural or uncorrected vision on 01/14/2002 as a result of this accident. The fact that his vision was subsequently surgically corrected is not properly to be considered [o]n permanent partial disability awards.

{¶ 17} "The case of *State ex rel. Welker v. Industrial Commission* (2001), 91 Ohio St.3d 98 [742 N.E.2d 622], was submitted at today's hearing in support of the proposition that *Welker* essentially overrules the *Kroger* case. After reading this case, the Staff Hearing Officer finds that it does not explicitly overrule *Kroger*. The *Welker* case turned on the narrow issue of whether claimant can be

compensated for total loss of use of a thumb due to amputation. The case at bar involves a different issue; the total loss of vision. Thus, the *Welker* case is found to be inapplicable."

{¶ 18} 7. Relator's further appeal was refused by order of the commission mailed January 29, 2003.

{¶ 19} 8. Thereafter, relator filed the instant mandamus action in this court.

Conclusions of Law

{¶ 20} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, relator must show that she has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631. A clear legal right to a writ of mandamus exists where the relator shows that the commission abused its discretion by entering an order that is not supported by any evidence in the record. *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. On the other hand, where the record contains some evidence to support the commission's findings, there has been no abuse of discretion, and mandamus is not appropriate. *State ex rel. Lewis v. Diamond Foundry Co.* (1987), 29 Ohio St.3d 56, 29 OBR 438, 505 N.E.2d 962. Furthermore, questions of credibility and the weight to be given evidence are clearly within the discretion of the commission as fact finder. *State ex rel. Teece v. Indus. Comm.* (1981), 68 Ohio St.2d 165, 22 O.O.3d 400, 429 N.E.2d 433.

{¶ 21} R.C. 4123.57(B) provides:

{¶ 22} "In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage as defined in division (C) of section 4123.62 of the Revised Code per week and shall continue during the periods provided in the following schedule:

{¶ 23} "* * *

{¶ 24} "For the loss of the sight of an eye, one hundred twenty-five weeks."

{¶ 25} In *Kroger Co.*, the claimant had sustained severe corneal burns to both eyes and ultimately required a corneal transplant to his right eye. The claimant filed an application for additional compensation for loss of uncorrected vision in both eyes pursuant to R.C. 4123.57(C), now 4123.57(B). The employer had argued that the claimant's loss of vision had been surgically repaired and, as such, did not represent an actual loss. The court ultimately held as follows:

{¶ 26} "The improvement of vision resulting from a corneal transplant is a correction to vision and thus, shall not, on the current state of the medical art, be taken into consideration in determining the percentage of vision actually lost pursuant to R.C. 4123.57(C)." Id. at paragraph two of the syllabus.

{¶ 27} Relator argues that claimant failed to meet his burden of proof, as claimant did not present evidence of his visual acuity prior to the injury. As such, relator argues that claimant did not show a percentage of loss.

{¶ 28} In the present case, the evidence shows that the injury to claimant's eye caused a traumatic cataract to that eye that did not exist prior to the injury. "Cataract" is defined as follows and can be caused by a traumatic event: "Opacity of the lens of the eye, its capsule, or both." Taber's Cyclopedic Medical Dictionary (18th Ed.1997) 329. The word "opacity" is defined as follows: "the quality or state of a body that makes it impervious to the rays of light." Merriam–Webster (9th Ed.1987) 826. Treatment for a cataract involves the surgical removal of the lens and the implantation of a replacement lens.

{¶ 29} The medical evidence in the record clearly establishes that the work-related injury caused a traumatic cataract to occur in claimant's eye and that there is no dispute that, in order to treat claimant's work-related injury, the now opaque lens had to be removed and an artificial lens had to be implanted. Claimant was 28 years of age at the time of the injury and, according to Dr. Calloway's report, claimant had no eye problems prior to the injury. Claimant's vision in his right, uninjured eye was 20/20. As such, the evidence is clear that, due to the injury, the doctors necessarily had to remove claimant's cornea and implant a new one. As such, the evidence does show that claimant sustained a total loss of vision in his left eye.

{¶ 30} Relator further contends that this court should apply the rationale from *Welker*, 91 Ohio St.3d 98, 742 N.E.2d 622, which, according to relator, overruled *Kroger*. However, this magistrate finds that the *Welker* case does not apply to the facts of this case. In *Welker*, the claimant suffered a serious industrial injury to his left thumb. When he was transported to the hospital, his thumb was attached by only a sliver of skin and muscle. Following surgery, the doctors were able to reattach his thumb. The claimant recovered well and gained good motion at the MP joint, although his thumb remained fairly stiff at the IP joint.

{¶ 31} The claimant filed an application for scheduled loss under R.C. 4123.57(B) based upon the amputation of the total left thumb. The commission denied the award because claimant's thumb had been successfully reattached and there was no evidence of a permanent total loss of use of the thumb.

{¶ 32} The claimant filed a mandamus action in this court; however, this court upheld the commission's denial of benefits. On further appeal, the Ohio Supreme Court declined to adopt the claimant's argument that his loss should be determined as of the time he was injured and not following the reattachment and recovery. The court noted that there was no dispute among the litigants or the judiciary that a prosthesis does not foreclose an amputation award under the statute, and cited *Kroger Co.*

{¶ 33} Contrary to relator's argument, the court's decision in *Welker* did not in any way change the holding in *Kroger Co.,* and the present case is distinguishable from *Welker.* As in *Kroger Co.,* the claimant in this action had his cornea removed and an artificial lens implanted in its place. The removal of the cornea in both the *Kroger Co.* and the present case was a direct result of the industrial injury. Unlike *Welker,* where the amputated thumb was able to be reattached, the doctors in *Kroger Co.* and this case were not able to repair the claimants' damaged corneas. Instead, those lenses were rendered completely useless and had to be removed. In their place, an artificial lens transplant was inserted. In both cases, the claimant sustained a total loss of vision, and the commission awarded them compensation.

{¶ 34} Based on the foregoing, it is this magistrate's decision that relator has not demonstrated that the commission abused its discretion in granting claimant a total loss of vision for his eye and relator's request for a writ of mandamus should be denied.

/s/ Stephanie Bisca Brooks
STEPHANIE BISCA BROOKS
MAGISTRATE