THE STATE EX REL. AUTOZONE, INC., APPELLANT, *v.* INDUSTRIAL
COMMISSION OF OHIO ET AL., APPELLEES.

[Cite as *State ex rel. AutoZone, Inc. v. Indus. Comm.,*
117 Ohio St.3d 186, 2008-Ohio-541.]

(No. 2006–1421—Submitted July 10, 2007—Decided February 21, 2008.)

———————————

PFEIFER, J.

{¶ 1} Today we hold that the Industrial Commission does not abuse its discretion when it finds that a claimant has suffered "the loss of the sight of an eye" under R.C. 4123.57(B) when a doctor diagnoses the claimant as "legally blind" in that eye due to an industrial injury. We thus affirm the judgment of the court of appeals.

Factual and Procedural Background

{¶ 2} On January 16, 2004, Stephen Gaydosh, an employee of AutoZone, Inc., perforated his left eye with a screwdriver while installing a wiper blade. Gaydosh's workers' compensation claim was allowed for "perforated globe left eye."

{¶ 3} On May 6, 2004, Gaydosh was examined by his treating ophthalmologist, Dr. Francis S. Mah. In his report dated May 18, 2004, Dr. Mah stated:

{¶ 4} "[Gaydosh] is aphakic due to the loss of the lens during the trauma and repair. In terms of vision loss today, he is legally blind, 20/200 although he does have better potential for vision. * * * At this stage, I would say that he has lost at least 75 to 80% of his vision * * *."

{¶ 5} On August 13, 2004, Gaydosh moved the commission for a scheduled loss award for total loss of vision in his left eye based on the loss of his natural lens. On October 1, 2004, at the request of AutoZone, Gaydosh was examined by Dr. Thomas B. Magness. In a report dated October 5, 2004, Dr. Magness wrote:

{¶ 6} "Visual acuity (with correction) was 20/20 in the right eye and 20/200 in the left eye. * * * The eye was aphakic. * * *

{¶ 7} "I feel [that the claimant] sustained loss of vision in the left eye directly and solely due to the industrial injury which occurred on January 16, 2004."

{¶ 8} A district hearing officer denied a total-loss award, finding that Gaydosh still had some vision remaining in his left eye:

{¶ 9} "In light of the fact that injured worker's own treating physician, Dr. Mah, and employer's reviewing physician, Dr. Magness, both state that the injured worker has some left eye vision loss as the result of the 01/16/2004 industrial accident but not 100% total left eye vision loss, District Hearing Officer denies injured worker's * * * motion * * * requesting a scheduled loss/loss of use award for '100% TOTAL LOSS OF VISION LEFT EYE.' "

{¶ 10} The hearing officer found that Gaydosh did not demonstrate that the removal of his lens produced a total loss of his uncorrected vision in the affected eye.

{¶ 11} On appeal, a staff hearing officer reversed the district hearing officer's determination. The staff hearing officer relied in part on the Tenth District Court of Appeals' decision in *State ex rel. Parsec, Inc. v. Indus. Comm.*, 155 Ohio App.3d 303, 2003-Ohio-6186, 800 N.Ed.2d 1180, which involved a claimant whose lens was surgically removed after it became opaque due to an industrial accident. The claimant in *Parsec* obtained an award for total vision loss. The hearing officer also relied on two other vision-loss cases—*State ex rel. Gen. Elec. Corp. v. Indus. Comm.*, 103 Ohio St.3d 420, 2004-Ohio-5585, 816 N.E.2d 588, and *State ex rel. Kroger v. Stover* (1987), 31 Ohio St.3d 229, 31 OBR 436, 510 N.E.2d 356—and R.C. 4123.95, which directs liberal construction of workers' compensation statutes in favor of injured workers.

{¶ 12} The Industrial Commission refused AutoZone's attempted appeal.

{¶ 13} AutoZone then filed a complaint in mandamus in the Tenth District Court of Appeals, alleging that the commission had abused its discretion in issuing a total-loss-of-vision award. The court of appeals adopted the commission's reasoning and result and denied the writ, prompting AutoZone's appeal to this court as of right.

## Law and Analysis

{¶ 14} In order for this court to issue a writ of mandamus, AutoZone must show that it has a clear legal right to the relief sought and that the commission has a clear legal duty to provide such relief. *State ex rel. Rouch v. Eagle Tool & Machine Co.* (1986), 26 Ohio St.3d 197, 198, 26 OBR 289, 498 N.E.2d 464, citing *State ex rel. Pressley v. Indus. Comm.* (1967), 11 Ohio St.2d 141, 40 O.O.2d 141, 228 N.E.2d 631, and *State ex rel. Elliott v. Indus. Comm.* (1986), 26 Ohio St.3d 76, 26 OBR 66, 497 N.E.2d 70. " 'The appropriate standard guiding our review is whether there is "some evidence" in the record to support the commission's decision. * * * If so, then the commission will not be deemed to have abused its discretion, and the granting of a writ of mandamus to correct an abuse of

discretion is not warranted.'" *State ex rel. Avalon Precision Casting Co. v. Indus. Comm.,* 109 Ohio St.3d 237, 2006-Ohio-2287, 846 N.E.2d 1245, ¶ 9, quoting *State ex rel. Secreto v. Indus. Comm.* (1997), 80 Ohio St.3d 581, 582–583, 687 N.E.2d 715.

{¶ 15} R.C. 4123.57(B) sets forth the compensation schedule for partial disability compensation, and provides:

{¶ 16} "For the loss of the sight of an eye, one hundred twenty-five weeks.

{¶ 17} "For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five percent of uncorrected vision. 'Loss of uncorrected vision' means the percentage of vision actually lost as result of the injury or occupational disease."

{¶ 18} The question under R.C. 4123.57(B) is whether a claimant has suffered loss of sight or partial loss of sight. The answer to that question determines whether the claimant receives 125 weeks of compensation or some percentage thereof. Today, we make the unremarkable holding that pursuant to R.C. 4123.57(B), when a doctor determines that a claimant is rendered "legally blind" due to the loss of a lens in an industrial accident, that determination constitutes "some evidence" that the claimant has suffered "the loss of the sight of an eye" pursuant to R.C. 4123.57(B).

{¶ 19} AutoZone seeks to distinguish this case from *Parsec,* claiming that in *Parsec* the claimant had proven a complete loss of vision necessitating the removal and replacement of his lens. Here, Dr. Mah opined that Gaydosh lost his lens "during the trauma and repair." AutoZone thus suggests that since Gaydosh's lens was not determined to be opaque prior to its removal, Gaydosh should not receive the same award as the claimant in *Parsec.*

{¶ 20} AutoZone clings to one line in Dr. Mah's diagnosis in asserting that Gaydosh is entitled to an award for only *partial* loss of sight. AutoZone argues that Dr. Mah specified that the percentage of vision actually lost in Gaydosh's left eye was "only" 75 to 80 percent. However, Dr. Mah stated that the injury was "at least" 75 to 80 percent, intimating that the loss could be greater, and did not state whether that percentage reflected the claimant's corrected or uncorrected vision in that eye. More important, Dr. Mah concluded that the injury had left Gaydosh "legally blind."

{¶ 21} AutoZone's doctor did not even attempt to put a percentage on the claimant's loss of sight, and instead used the term "loss of vision": "I feel [that the claimant] sustained loss of vision in the left eye directly and solely due to the industrial injury which occurred on January 16, 2004." Dr. Magness did not

refer to a "partial" loss of sight, which might have triggered the necessity of applying percentages to the loss of vision to determine the proper award. Instead, Dr. Magness found that the claimant's *corrected* vision in his injured eye was 20/200.

{¶ 22} That 20/200 measurement is a significant standard in the definition of blindness. R.C. 3304.28(B)(1) defines "blind" as "[v]ision twenty/two hundred or less in the better eye with proper correction." In *State ex rel. Nastuik v. Indus. Comm.* (1945), 145 Ohio St. 287, 292, 30 O.O. 503, 61 N.E.2d 610, this court wrote that " '[t]he reduction in visual acuity to 20/200 * * * or a reduction in visual efficiency to 20 per cent or less, is the accepted standard of industrial blindness.' " Id., quoting a report of the Committee on Visual Economics of the American Medical Association, reprinted in May, Diseases of the Eyes (18th Ed.1943) 221. In *Nastuik*, this court denied a claimant's writ of mandamus, holding that since the claimant had 20/200 corrected vision before his industrial injury, he was already blind before his injury and thus was not entitled to compensation for loss of sight.

{¶ 23} In *State ex rel. Gen. Elec. Corp. v. Indus. Comm.*, 103 Ohio St.3d 420, 2004-Ohio-5585, 816 N.E.2d 588, the claimant's vision decreased to 20/200 after an industrial accident, and the commission granted a scheduled loss award under R.C. 4123.57(B) for total loss of vision in both eyes. The fact that the claimant's 20/200 vision was bad enough to constitute "the loss of the sight of an eye" was not disputed in that case. Instead, this court dealt with whether corrective surgery that resolved the claimant's vision loss foreclosed an award for total loss of vision. We held that the surgery constituted a correction, not a restoration, of the claimant's sight, and that the court of appeals had erred in disallowing the commission's award based upon the claimant's surgical correction.

{¶ 24} Gaydosh here suffered essentially the same injury as the claimant in *Parsec*, and at least the same extent of vision loss as the claimant in *Gen. Elec.* Both doctors found Gaydosh's vision in his injured eye to be 20/200. That level of vision is consistent with legal blindness under Ohio statutory and case law.

{¶ 25} R.C. 4123.95 directs liberal construction of workers' compensation statutes in favor of injured workers. A liberal construction is not necessary in this case. It is self-evident that blindness fulfills the requirement of "the loss of the sight of an eye." Therefore, the opinions of two doctors that Gaydosh was rendered legally blind in his left eye due to a workplace injury constituted "some evidence" in the record to support the commission's decision that Gaydosh had suffered "the loss of the sight of an eye" under R.C. 4123.57(B).

{¶ 26} Accordingly, we affirm the judgment of the court of appeals.

Judgment affirmed.

LUNDBERG STRATTON, O'CONNOR, and LANZINGER, JJ., concur.

MOYER, C.J., and O'DONNELL and CUPP, JJ., dissent.

---

**O'DONNELL, J., dissenting.**

{¶ 27} We are asked here to determine whether the commission's award for total loss of sight of an eye is supported by "some evidence." Because the commission's decision here is not supported by any evidence establishing a 100 percent loss of vision in the claimant's left eye, it should be reversed. Accordingly, I respectfully dissent from the majority opinion to the contrary.

{¶ 28} In *State ex rel. ABF Freight Sys., Inc. v. Indus. Comm.*, 96 Ohio St.3d 80, 2002-Ohio-3612, 771 N.E.2d 850, the claimant suffered a thumb injury requiring surgical arthrodesis. The commission granted a total-loss award despite determining that the claimant had "limited voluntary movement" of the thumb. Id. at ¶ 9.

{¶ 29} ABF filed a mandamus action in the Tenth District Court of Appeals, which granted relief. This court affirmed the appellate court and recognized that "while the evidence established that claimant suffered a serious thumb injury, it [did] not demonstrate the total stiffness required" and that "[n]one of the examining doctors * * * found the statutory prerequisite for a finding of ankylosis—total stiffness of the affected area." Id. at ¶ 15.

{¶ 30} Further, in *State ex rel. Moorehead v. Indus. Comm.*, 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, the decedent's widow sought a loss-of-use award for injuries her husband sustained prior to death. The commission denied the award, saying that because decedent never awoke from his coma before dying, he was unaware of the loss sustained and was ineligible for an award. Id. at ¶ 3. We disagreed, stating that R.C. 4123.57(B) contained no requirement that the injured worker be conscious and cognizant of the loss, id. at ¶ 16, and we found that the commission abused its discretion in denying recovery. Central to our decision was our duty in interpreting statutes " 'to give effect to the words used, not to delete words used or to insert words not used.' " Id. at ¶ 15, quoting *Columbus–Suburban Coach Lines, Inc. v. Pub. Util. Comm.* (1969), 20 Ohio St.2d 125, 127, 49 O.O.2d 445, 254 N.E.2d 8.

{¶ 31} Finally, in *State ex rel. Spangler Candy Co. v. Indus. Comm.* (1988), 36 Ohio St.3d 231, 522 N.E.2d 1078, the commission granted the claimant a permanent partial award for a 68.75 percent loss of sight. We granted relief in mandamus to the employer, reasoning that while the record offered some evidence of loss of sight, it offered *no* evidence that the claimant lost 68.75 percent of his eye sight. Id. at 235, 522 N.E.2d 1078. Indeed, testimony from a treating physician established that the industrial injury caused, at most, 50

percent of the claimant's actual sight loss. Id. The claimant's preexisting condition, for which recovery was not allowed, accounted for some of the loss. Id.

{¶ 32} However, in the instant case, Dr. Mah, Gaydosh's treating physician, specified that the percentage of vision actually lost in the left eye was 75 to 80 percent. The commission relied upon Dr. Mah's medical report in granting Gaydosh's motion, but made an award for a 100 percent loss of vision. The commission concedes that *none* of the medical evidence of record supports a finding of 100 percent loss of vision in the left eye. Accordingly, in line with our precedent in *ABF Freight, Moorehead,* and *Spangler,* I would assert that the determination of a 100 percent loss of vision is not supported by evidence of a total vision loss contained in the record.

{¶ 33} The majority relies heavily on *State ex rel. Parsec, Inc. v. Indus. Comm.,* 155 Ohio App.3d 303, 2003-Ohio-6186, 800 N.E.2d 1180, in reaching its decision. In that case, an industrially induced cataract blocked all light, necessitating surgical replacement of the eye's natural lens with an artificial one. The commission awarded total loss of vision in that eye, and the employer filed a mandamus in the Tenth District Court of Appeals.

{¶ 34} The appellate court considered the question whether the artificial-lens implant was a "correction" of vision, something not taken into account when calculating the percentage of vision actually lost according to R.C. 4123.57(C). The appellate court concluded that it was a correction of vision and therefore upheld the commission's award.

{¶ 35} *Parsec,* however, is distinguishable from the facts in this case because, there, the record contained evidence that the claimant had suffered a 100 percent loss. Accordingly, *Parsec* should not be read as compelling a 100 percent award for the loss of a natural lens when the medical evidence indicates that the resulting loss of vision is 75 to 80 percent.

{¶ 36} More fundamentally, I disagree with the majority's use of the term "legal blindness." That term does not appear in R.C. 4123.57(B), and use of the term does not have meaning in the context of a total loss of vision. See *Moorehead,* 112 Ohio St.3d 27, 2006-Ohio-6364, 857 N.E.2d 1203, ¶ 15, quoting *Columbus–Suburban Coach Lines,* 20 Ohio St.2d at 127, 49 O.O.2d 445, 254 N.E.2d 8. R.C. 4123.57(B) awards compensation for either "the loss of the sight of an eye" or "the permanent partial loss of sight of an eye." Gaydosh's own treating physician, Dr. Mah, reported that he sustained a 75 to 80 percent loss of sight—which is a "permanent partial loss of sight" as defined by the statute—not "the loss of the sight of an eye." Simply put, there is no evidence supporting an award for total loss of vision as required by statute.

{¶ 37} No one disputes the horrific nature of the injury sustained by this employee. However, despite the destruction of the lens in his left eye, Gaydosh

did not lose 100 percent of uncorrected vision in that eye. Because R.C. 4123.57(B) does not create a presumptive total loss of vision for the loss of a natural lens, the court should apply the plain language of that statute to the facts of this case. In accordance with R.C. 4123.57(B), then, the commission abused its discretion in making a 100 percent award because its determination here is not supported by the evidence contained in this record. Accordingly, I would reverse the judgment of the court of appeals.

MOYER, C.J., and CUPP, J., concur in the foregoing opinion.

---

Crabbe, Brown & James, L.L.P., and John C. Albert, for appellant.

Marc Dann, Attorney General, and Derrick L. Knapp, Assistant Attorney General, for appellee Industrial Commission.

Ward, Kaps, Bainbridge, Maurer & Melvin, Thomas H. Bainbridge, and William J. Melvin, for appellee Stephen Gaydosh.