Lundberg Stratton, J.
{¶ 1} Today, we are asked to determine whether the surgical removal of the lens of an eye in the course of treatment for a workplace injury entitles the injured worker to compensation pursuant to R.C. 4123.57(B) for a total loss of sight.
{¶ 2} We decline to adopt a bright-line rule that a claimant is entitled to an award for a total loss of vision under R.C. 4123.57(B) any time the natural lens or cornea of the eye is surgically removed as a result of a workplace injury. The court of appeals below properly calculated the loss of sight based on the percentage of vision actually lost as a result of the injury, prior to any corrective surgery. Because the amount of vision lost was less than the minimum 25 percent required by R.C. 4123.57(B), the claimant was not entitled to an award for loss of sight. We affirm the judgment of the court of appeals.
Factual and Procedural History
{¶ 3} On November 3, 2007, appellant Jamey D. Baker was struck in the right eye by a piece of metal while working for appellee, Coast to Coast Manpower, L.L.C. He went to an urgent-care facility, where his visual acuity in that eye measured 20/25. He was immediately transferred to a hospital, where an ophthalmologist surgically removed the metal piece and repaired the laceration of his cornea.
{¶ 4} Baker’s workers’ compensation claim was allowed for corneal foreign body and laceration of the right eye. It was later amended to include traumatic *139 cataract. On February 18, 2008, Dr. Jack Hendershot surgically removed the cataract and replaced the natural lens with an intraocular lens implant. Prior to the cataract surgery, Baker’s visual acuity in his right eye measured 20/30. Following the lens implant, his visual acuity improved to 20/25.
{¶ 5} Baker filed a motion with the Bureau of Workers’ Compensation (“BWC”) for loss of vision of the right eye under R.C. 4123.57(B), based on the cataract surgery in which his natural lens was removed and replaced by an implant. Dr. Richard Tam examined Baker on behalf of the BWC and, asked to assume that Baker’s vision was 20/20 before the accident, concluded that Baker had an eight percent vision impairment as a result of his injury.
{¶ 6} A district hearing officer granted Baker an 8 percent permanent partial disability award based on the vision impairment. A staff hearing officer vacated that order and granted an award for a total loss of vision in the right eye. The employer appealed on the basis that Baker’s “loss of uncorrected vision” did not exceed 25 percent prior to surgery as required by R.C. 4123.57(B). The Industrial Commission agreed. The commission vacated the order of the staff hearing officer and denied the claimant’s request for loss-of-vision benefits.
{¶ 7} Baker filed a complaint in the Tenth District Court of Appeals for a writ of mandamus ordering the commission to grant his request for compensation for a total loss of vision. The court of appeals relied on State ex rel. Kroger v. Stover (1987), 31 Ohio St.3d 229, 31 OBR 436, 510 N.E.2d 356, and held that Baker’s vision loss must be determined by comparing his preinjury uncorrected vision with his presurgical uncorrected vision. Because his loss of uncorrected vision was less than 25 percent, the court concluded that Baker did not meet the statutory threshold for even a partial loss-of-vision award. State ex rel. Baker v. Coast to Coast Manpoiver, L.L.C., 10th Dist. No. 09AP-287, 2009-Ohio-6663, 2009 WL 4861446, ¶ 5. The court denied the writ.
{¶ 8} This cause is before this court on Baker’s appeal as of right. The Industrial Commission has changed its position and has appealed in support of Baker’s argument that he is entitled to an award for total loss of vision.
Legal Analysis
{¶ 9} The Industrial Commission’s order denying benefits for loss of vision is a decision as to the extent of disability and not subject to appeal. Kroger, paragraph one of the syllabus. Thus, mandamus is the proper method to examine whether the commission has abused its discretion. Id., 31 Ohio St.3d at 232, 31 OBR 436, 510 N.E.2d 356. For a court to issue a writ of mandamus, a relator must demonstrate a clear legal right to the relief sought and a clear legal duty of the respondent to provide such relief. State ex rel. AutoZone, Inc., v. Indus. Comm., 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, ¶ 14. If the *140 record contains some evidence to support the commission’s findings, there has been no abuse of discretion and a court has no basis to award a writ of mandamus. Id.
{¶ 10} R.C. 4123.57(B) sets forth rates of compensation for the loss of listed body parts. “Loss” includes loss of use of a body part. State ex rel Walker v. Indus. Comm. (1979), 58 Ohio St.2d 402, 12 O.O.3d 347, 390 N.E.2d 1190. The statute’s provisions relevant to the eye provide:
{¶ 11} “For the loss of the sight of an eye, one hundred twenty-five weeks.
{¶ 12} “For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. ‘Loss of uncorrected vision’ means the percentage of vision actually lost as the result of the injury or occupational disease.”
{¶ 13} It is undisputed that Baker’s vision measured 20/25 following the injury and that he had an 8 percent visual impairment. It is also undisputed that he developed a traumatic cataract as a result of his injury that was surgically removed and that his lens was replaced by an intraocular lens implant. Appellants contend that the surgical removal of his natural lens during the cataract surgery resulted in a total loss of vision. Appellants ask us to establish a broad rule that compensation for a total loss of vision is warranted any time the natural lens is removed during surgical repair of the eye due to a workplace injury, because when a lens is surgically removed, the claimant has permanently lost a natural part of the eye that is necessary for sight.
{¶ 14} Appellee, on the other hand, argues that the loss of the lens, by itself, does not result in a total loss of sight. The plain language of the statute requires the claimant to have at least a 25 percent loss of sight. Here, Baker’s decreased visual acuity did not reach the 25 percent statutory threshold for even a partial loss-of-vision award. Therefore, he is not entitled to an award for total loss of sight.
{¶ 15} We have previously awarded compensation for a total loss of vision in cases where a claimant lost a lens or cornea as a result of a workplace injury. In Kroger, 31 Ohio St.3d 229, 31 OBR 436, 510 N.E.2d 356, the claimant was exposed to ammonia that burned his corneas. He underwent a corneal transplant in his right eye. The issue in Kroger involved whether to measure the loss of vision before or after the transplant. We held that improvement of vision from the transplant was a correction to vision that is not to be considered when determining the percentage of vision actually lost. Consequently, the claimant in Kroger *141 was entitled to compensation for a total loss of vision based upon his severely impaired vision prior to removal of his burned cornea.
{¶ 16} In State ex rel. Gen. Elec. Corp. v. Indus. Comm., 103 Ohio St.3d 420, 2004-Ohio-5585, 816 N.E.2d 588, the claimant received an electrical shock that caused cataracts in both eyes, and his visual acuity decreased to 20/200. The claimant had cataract surgery and received intraocular lens implants in both eyes. We upheld the commission’s award of compensation for total loss of sight in both eyes based upon his loss of uncorrected vision as measured after the injury, but prior to any corrective surgery. In both Kroger and Gen. Elec., the claimants lost a natural part of the eye, but each had suffered a significant loss of uncorrected vision that by itself satisfied the statutory standard to support the award for loss of sight.
{¶ 17} In State ex rel. AutoZone, 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, a screwdriver perforated the claimant’s left eye. As a result, he lost his natural lens. When he applied for total-loss compensation, the claimant submitted the report of his physician, who concluded that the claimant was legally blind as a result of the injury. We determined that a medical opinion of legal blindness constituted some evidence that the claimant had lost the sight of the eye, and we upheld an award of compensation for total loss of sight. Id. at ¶ 18.
{¶ 18} The appellants also cite State ex rel. Parsec, Inc. v. Agin, 155 Ohio App.3d 303, 2003-Ohio-6186, 800 N.E.2d 1180, in which the Tenth District Court of Appeals issued a writ of mandamus ordering the Industrial Commission to grant compensation for total loss of vision to a claimant who had suffered intraocular penetration when a wire struck his left eye. The claimant underwent surgery to repair the injury, which involved removal of the traumatized lens and insertion of a replacement lens. The court, adopting the magistrate’s findings, concluded that the claimant’s loss of vision in his left eye, before correction, was total. Id. at ¶ 28-29.
{¶ 19} AutoZone and Parsec are distinguishable from the facts in Baker’s case. Similar to the claimants in Kroger and Gen. Elec., the claimants in AutoZone and Parsec both suffered major vision loss far exceeding the statutory minimum of 25 percent. It was this loss of uncorrected vision following the injury, not the loss of the lens or cornea by itself, that formed the basis for the award of compensation for a total loss of sight in the eye. Baker never experienced any such loss.
{¶ 20} When an injured worker applies for a scheduled-loss award, “[t]he question under R.C. 4123.57(B) is whether a claimant has suffered loss of sight or partial loss of sight.” AutoZone, 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, ¶ 18. The statutory standard for measuring even a partial loss of sight is “the percentage of vision actually lost as a result of the injury.” R.C. 4123.57(B). The loss of vision is determined by the measurement of uncorrected vision *142 following the injury, but prior to any corrective surgery such as a lens implant or cornea transplant. State ex rel. Lo-Z-Boy Furniture Galleries v. Thomas, 126 Ohio St.3d 134, 2010-Ohio-3215, 931 N.E.2d 545, ¶ 16; Gen. Elec., 103 Ohio St.3d 420, 2004-Ohio-5585, 816 N.E.2d 588, ¶ 16.
{¶ 21} Appellants emphasize the causal connection between the injury and the removal of a natural part of the eye, either lens or cornea, that results in the loss of sight. This bright-line approach disregards the plain language of the statute. R.C. 4123.57(B) requires a loss of sight of an eye for the employee to be entitled to compensation. For even a partial loss of sight, the injured worker must establish at least a 25 percent loss of uncorrected vision, defined as “the percentage of vision actually lost as the result of the injury or occupational disease.”
Conclusion
{¶ 22} It is undisputed that Baker’s vision in his injured right eye measured 20/25 immediately following the accident. Prior to undergoing cataract surgery several months later, his vision was 20/30. Dr. Tam opined prior to the cataract surgery that Baker had suffered an 8 percent visual impairment. After surgery, his vision returned to 20/25. At no time following his injury did Baker’s “loss of uncorrected vision” reach the statutory threshold of 25 percent. It follows that he was unable to establish a total loss of sight. Therefore, we hold that Baker has not suffered a loss of sight that is compensable under R.C. 4123.57(B).
{¶ 23} Because there was some evidence supporting the commission’s decision to deny loss-of-vision benefits, there was no abuse of discretion and the court below had no basis to grant a writ of mandamus. Consequently, we affirm the judgment of the court of appeals.
Judgment affirmed.
O’Donnell and McFarland, JJ., concur.
Cupp, J., concurs separately.
O’Connor, C.J., and Pfeifer and McGee Brown, JJ., dissent.
Matthew W. McFarland, J., of the Fourth Appellate District, sitting for Lanzinger, J.