[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Beyer v. Autoneum N. Am.,* Slip Opinion No. 2019-Ohio-3714.]

NOTICE

This slip opinion is subject to formal revision before it is published in an advance sheet of the Ohio Official Reports.  Readers are requested to promptly notify the Reporter of Decisions, Supreme Court of Ohio, 65 South Front Street, Columbus, Ohio 43215, of any typographical or other formal errors in the opinion, in order that corrections may be made before the opinion is published.

SLIP OPINION NO. 2019-OHIO-3714

THE STATE EX REL. BEYER, APPELLEE, *v.* AUTONEUM NORTH AMERICA ET AL.; INDUSTRIAL COMMISSION OF OHIO, APPELLANT.

[Until this opinion appears in the Ohio Official Reports advance sheets, it may be cited as *State ex rel. Beyer v. Autoneum N. Am.,* Slip Opinion No. 2019-Ohio-3714.]

*Workers' compensation—Awards under R.C. 4123.57(B) for permanent partial loss of sight—Claimant was required to submit medical evidence showing degree of visual impairment to establish claim for award based on "percentage of vision actually lost"—Industrial Commission correctly refused to determine degree of impairment based on medical evidence of pre- and postinjury visual acuity—Court of appeals' judgment granting writ of mandamus ordering commission to grant award reversed.*

(No. 2018-0833—Submitted June 11, 2019—Decided September 17, 2019.)

APPEAL from the Court of Appeals for Franklin County, No. 17AP-276, 2018-Ohio-1700.

_____

**Per Curiam.**

{¶ 1} Appellee, Thomas H. Beyer, sought an award under R.C. 4123.57 for the permanent partial loss of sight in his right eye. Appellant, Industrial Commission of Ohio, denied Beyer's request because he did not present medical evidence of the percentage of vision lost. Finding that Beyer had provided the commission with enough evidence for it to determine the percentage, the Tenth District Court of Appeals granted Beyer's request for a writ of mandamus and ordered the commission to vacate its decision and grant Beyer the requested award. The commission appeals. Because a physician, not the commission, must determine the degree of a claimant's impairment, we reverse the Tenth District's judgment.

## I. FACTS AND PROCEDURAL HISTORY

{¶ 2} Beyer developed cataracts in both eyes from his long-term use of corticosteroids to treat an industrial injury. The commission approved Beyer's request to add bilateral-cataract syndrome to his worker's compensation claim "on a flow-through basis due to the use of steroid medications for treatment of the previously allowed pulmonary conditions." Beyer requested an award for a 35 percent loss of vision in his right eye under R.C. 4123.57, which includes a schedule of specific compensation for the permanent partial "loss of sight of an eye," based on "the percentage of vision actually lost as a result of the injury or occupational disease," R.C. 4123.57(B).

{¶ 3} A commission district hearing officer ("DHO") granted the request, finding that the record contained medical evidence that Beyer's cataracts were causally related to his industrial injury. The DHO additionally noted evidence in the record that Beyer's preinjury right-eye visual acuity was 20/20 and that his postinjury right-eye visual acuity was 20/100.

{¶ 4} Visual acuity "describes the ability of the eye to perceive details." American Medical Association, *Guides to the Evaluation of Permanent Impairment*

280 (5th Ed.2001) ("AMA Guides"). Visual-acuity values are usually stated in terms of a Snellen fraction, e.g., 20/20. *Id.* at 284. A Snellen fraction reports the result of a test in which a patient reads letters from a chart positioned some distance away. American Medical Association, *Guides to the Evaluation of Permanent Impairment* 209-210 (4th Ed.1993). The numerator in a 20/xx Snellen fraction represents the distance in feet from the patient to the chart, and the denominator represents the distance at which an eye with 20/20 vision would see the smallest letter discerned by the patient. *Id.* at 210. A Snellen fraction does not indicate a percentage of visual acuity. *Id.* Visual acuity is only one component of total vision, which also can be affected by losses in, for example, visual field and ocular motility. *See id.* at 209; AMA Guides at 296-297.

{¶ 5} To determine the degree of Beyer's vision loss, the DHO looked to Table 12-2 in the AMA Guides and found that uncorrected vision of 20/100 represented a 35 percent loss in visual acuity. The DHO equated the loss of visual acuity with the loss of vision and found that Beyer had suffered a 35 percent loss of vision in the right eye.

{¶ 6} Beyer's employer appealed the DHO's order. A commission staff hearing officer ("SHO") vacated the DHO's order and denied Beyer's R.C. 4123.57 request, finding that the record did not contain sufficient medical evidence to substantiate it. Specifically, the SHO found that the record lacked an explanation by a qualified physician that would support the 35 percent vision loss that Beyer alleged. The commission rejected Beyer's appeal of the SHO's order and rejected his attempt to submit new evidence, because the evidence was available at the time of the original adjudication.

{¶ 7} Beyer filed a complaint asking the Tenth District to issue a writ of mandamus vacating the SHO's order and reinstating the DHO's order. The court agreed with Beyer that the DHO had properly applied Table 12-2 of the AMA Guides to the medical evidence showing Beyer's preinjury and postinjury visual

acuity and that the SHO had erred by finding that Beyer failed to submit medical evidence establishing the percentage of vision lost. 2018-Ohio-1700, ¶ 9. The court therefore issued a writ of mandamus ordering the commission to vacate the SHO's order and enter an order granting Beyer's request for an R.C. 4123.57 award for 35 percent loss of uncorrected vision in his right eye. The commission appealed the Tenth District's judgment.

## II. ANALYSIS

### A. *The mandamus standard*

{¶ 8} When reviewing a claim for a writ of mandamus in a workers' compensation case, a court's role is to determine whether the commission abused its discretion. *See State ex rel. Packaging Corp. of Am. v. Indus. Comm.*, 139 Ohio St.3d 591, 2014-Ohio-2871, 13 N.E.3d 1163, ¶ 29. The commission is the exclusive finder of fact and has sole responsibility to evaluate the weight and credibility of the evidence. *State ex rel. Perez v. Indus. Comm.*, 147 Ohio St.3d 383, 2016-Ohio-5084, 66 N.E.3d 699, ¶ 20.

### B. *R.C. 4123.57(B)*

{¶ 9} R.C. 4123.57(B) provides for payment of the statewide average weekly wage to injured workers for a scheduled number of weeks for the loss of certain body parts or functions, including:

> For the loss of the sight of an eye, one hundred twenty-five weeks.
>
> For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision.

**{¶ 10}** Accordingly, "[w]hen an injured worker applies for a scheduled-loss award, '[t]he question under R.C. 4123.57(B) is whether a claimant has suffered loss of sight or partial loss of sight.' " *State ex rel. Baker v. Coast to Coast Manpower, L.L.C.*, 129 Ohio St.3d 138, 2011-Ohio-2721, 950 N.E.2d 924, ¶ 20 (plurality opinion), quoting *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, ¶ 18. The statutory standard for measuring a partial loss of sight is "the percentage of vision actually lost as a result of the injury." R.C. 4123.57(B).

### C. The parties' arguments

**{¶ 11}** The commission argues that the percentage of vision actually lost is a medical determination that must be made by a physician and presented to the commission as part of the medical evidence. Beyer argues that it is appropriate for the commission to determine the percentage of vision actually lost by comparing evidence of preinjury and postinjury visual acuity and referring to Table 12-2 in the AMA Guides.

### D. Medical evidence of impairment

**{¶ 12}** Because the commission lacks medical expertise, claims involving medical determinations may be established only by submitting appropriate medical evidence. *See State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 58, 689 N.E.2d 30 (1998). "[T]he amount of a claimant's anatomical and/or mental loss of function"—the claimant's "impairment"—"is to be determined by the doctors and set forth within the medical reports." *State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 171, 509 N.E.2d 946 (1987); *accord State ex rel. Meeks v. Ohio Brass Co.*, 10 Ohio St.3d 147, 148, 462 N.E.2d 389 (1984), quoting a medical-examination manual issued by the commission (" ' "Impairment" is a medical term measuring the amount of the claimant's anatomical and/or mental loss

of function as a result of the allowed injury/occupational disease. The examining physician evaluates impairment' ").

{¶ 13} Although the claimant's degree of impairment must be evaluated by a physician and addressed in the medical evidence submitted to the commission, the commission may then use that evidence to determine the claimant's disability. *State ex rel. Vernon v. Goodyear Aerospace Corp.*, 35 Ohio St.3d 40, 41-42, 517 N.E.2d 926 (1988), citing *Meeks* and *State ex rel. Elliott v. Indus. Comm.*, 26 Ohio St.3d 76, 497 N.E.2d 70 (1986); *Meeks* at 149 (distinguishing impairment from disability, which is "a legal term indicating the effect that the medical impairment has on the claimant's ability to work"); *Elliott* at 79 ("the issue of impairment * * * is a concern separate and distinct from the issue of disability"). Accordingly, to establish his claim for an R.C. 4123.57(B) award, which is based on the "percentage of vision actually lost," Beyer was required to submit medical evidence showing the degree of his visual impairment.

### E. Beyer's evidence

{¶ 14} Beyer presented medical evidence of his preinjury and postinjury visual acuity in the form of Snellen fractions (20/20 and 20/100, respectively). This was not evidence reflecting a physician's determination of his degree of impairment. Rather, it was evidence from which Beyer claimed *the commission* could determine his degree of impairment. The commission correctly refused to step into the role reserved for medical experts, and the Tenth District erred by finding that the commission abused its discretion.

{¶ 15} Beyer points out that in *State ex rel. Spangler Candy Co. v. Indus. Comm.*, 36 Ohio St.3d 231, 522 N.E.2d 1078 (1988), this court held that the commission did not abuse its discretion when it compared the claimant's preinjury and postinjury *visual-efficiency* ratings and thereby calculated the percentage of vision lost, *id*. at 232, 235. Our conclusion today is consistent with *Spangler Candy* because a visual-efficiency rating is an *impairment* rating that embodies a

determination of remaining visual function, taking into account losses in visual acuity and visual field. *See, e.g.*, 20 C.F.R. 404, Subpart P, Appendix 1, Section 2.00(A)(7)(a) ("Visual efficiency, a calculated value of your remaining visual function, is the combination of your visual acuity efficiency and your visual field efficiency expressed as a percentage" [emphasis omitted]); *see also Stedman's Medical Dictionary* 547 (26th Ed.1995) (visual efficiency is "a rating used in computing compensation for industrial ocular injuries, incorporating measurements of central acuity, visual field, and ocular motility").

**{¶ 16}** In *Spangler Candy*, a physician had determined the claimant's preinjury and postinjury visual-efficiency ratings and provided them to the commission, expressed as percentages of total vision remaining. *Spangler Candy* at 232. The commission could perform mathematical calculations to compare those figures because all the medical variables had been accounted for in the physician's determination of the visual-efficiency ratings. Here, by contrast, Beyer presented only his raw visual-acuity values in the form of Snellen fractions—which do not represent a physician's determination of the percentage of vision lost. Were it to attempt to utilize the information Beyer had provided, the commission would therefore not be *comparing* two ratings representing Beyer's preinjury and postinjury visual impairment but would be improperly *determining* his visual impairment.

**{¶ 17}** Visual-efficiency ratings are not the only evidence that can establish the degree of a claimant's visual impairment. Beyer also directs our attention to *State ex rel. Baker v. Coast to Coast Manpower L.L.C.*, 10th Dist. Franklin No. 09AP-287, 2009-Ohio-6663 ("*Baker I*"), *aff'd*, 129 Ohio St.3d 138, 2011-Ohio-2721, 950 N.E.2d 924 ("*Baker II*"), which illustrate that visual impairment may also be established by evidence of a physician's opinion regarding the percentage of uncorrected vision that the claimant has lost. *Baker I* at ¶ 35 ("the court has continually required claimants to meet the same burden of proof: the *percentage* of

uncorrected vision actually lost as a result of the injury" [emphasis added]). The record in *Baker I* and *II* contained a physician's determination that "the decrease in [the] relator's visual acuity from 20/20 to 20/30 represented an eight percent impairment," *Baker I* at ¶ 49, and the commission, the Tenth District, and this court all relied on that evidence in reaching their conclusions, *id.* at ¶ 21, 49, 53; *Baker II* at ¶ 22. Beyer's evidence, however, fell short of this standard.

{¶ 18} Finally, Beyer's citation of two cases involving total losses of vision rather than permanent partial losses is unavailing. In those cases, the record contained evidence that the claimants' postinjury visual acuity was 20/200 and that the claimants' physicians had determined them to be "legally blind." *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, 883 N.E.2d 372, ¶ 20-22; *State ex rel. Lay-Z-Boy Furniture Galleries v. Thomas*, 10th Dist. Franklin No. 08AP-827, 2009-Ohio-4546, ¶ 50, *aff'd sub nom. State ex rel. La-Z-Boy Furniture Galleries v. Thomas*, 126 Ohio St.3d 134, 2010-Ohio-3215, 931 N.E.2d 545. R.C. 4123.57(B) contains two provisions authorizing scheduled loss-of-vision awards: one for the total "loss of sight of an eye," regardless of the percentage of vision lost, and another for the "permanent partial loss of sight of an eye," which depends on the percentage of vision lost. Because *AutoZone* and *Lay-Z-Boy* involved legal blindness—i.e., total losses of vision—in those cases, the commission properly granted R.C. 4123.57(B) awards without medical evidence showing a physician's determination of the percentage of vision lost. Here, in contrast, Beyer's loss of vision was partial and he did not present evidence of a physician's determination of the degree of his impairment.

### III. CONCLUSION

{¶ 19} For these reasons, we reverse the judgment of the court of appeals.

Judgment reversed.

O'CONNOR, C.J., and KENNEDY, FRENCH, FISCHER, DEWINE, DONNELLY, and STEWART, JJ., concur.

_____

Spitler & Williams-Young Co., L.P.A., and Steven M. Spitler, for appellee.

Dave Yost, Attorney General, and Andrew Alatis, Assistant Attorney General, for appellant.

_____