[Cite as *State ex rel. Beyer v. Autoneum N. Am., Inc.* , 2018-Ohio-1700.]

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Thomas H. Beyer, | : | |
| Relator, | : | |
| v. | : | No. 17AP-276 |
| Autoneum North America, Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

D E C I S I O N

Rendered on May 1, 2018

**On brief:** *Spitler & Williams-Young Co., L.P.A., William R. Menacher,* and *Steven M. Spitler,* for relator. **Argued:** *Steven M. Spitler*

**On brief:** *Michael DeWine,* Attorney General, and *Patsy A. Thomas,* for respondent Industrial Commission of Ohio. **Argued:** *Patsy A. Thomas.*

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

LUPER SCHUSTER, J.

{¶ 1} Relator, Thomas H. Beyer, initiated this original action requesting that this court issue a writ of mandamus ordering respondent, Industrial Commission of Ohio ("commission"), to vacate the October 21, 2015 order of its staff hearing officer ("SHO") that denied relator's December 11, 2012 motion for R.C. 4123.57(B) compensation for the alleged permanent partial loss of sight of his right eye, and to enter an order awarding compensation for 35 percent loss of uncorrected vision in the right eye.

{¶ 2} This matter was referred to a magistrate of this court pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals. The magistrate issued the

appended decision, including findings of fact and conclusions of law. The magistrate concluded that Beyer failed to meet his burden before the commission of demonstrating that his industrial injury is the proximate cause of his alleged 35 percent loss of vision in his right eye. Thus, the magistrate recommends this court deny Beyer's request for a writ of mandamus.

{¶ 3} Beyer has filed an objection to the magistrate's decision. In his sole objection, Beyer asserts the magistrate erred in finding that there was insufficient medical evidence for the commission to find that he sustained 35 percent vision loss in his right eye due to his industrial injury. He argues that he met his burden of demonstrating his entitlement to the requested compensation for permanent partial loss of vision. For the following reasons, we agree.

{¶ 4} R.C. 4123.57(B) authorizes compensation for the loss of a claimant's vision. "For the loss of the sight of an eye," a claimant is entitled to receive 125 weeks of compensation. "For the permanent partial loss of sight of an eye," a claimant is entitled to "the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury." R.C. 4123.57(B). In no case, however, "shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision." R.C. 4123.57(B). " 'Loss of uncorrected vision' means the percentage of vision actually lost as a result of the injury or occupational disease." R.C. 4123.57(B). Under this standard, "correction enhances vision but does not eliminate the vision loss." *State ex rel. La-Z-Boy Furniture Galleries v. Thomas*, 126 Ohio St.3d 134, 2010-Ohio-3215, ¶ 16. Thus, "loss of vision is determined by the measurement of uncorrected vision following the injury, but prior to any corrective surgery such as a lens implant or cornea transplant." *State ex rel. Baker v. Coast to Coast Manpower, L.L.C.*, 129 Ohio St.3d 138, 2011-Ohio-2721, ¶ 20 (plurality), citing *La-Z-Boy Furniture Galleries* at ¶ 16; *State ex. rel. Gen. Elec. Corp. v. Indus. Comm.*, 103 Ohio St.3d 420, 2004-Ohio-5585, ¶ 16.

{¶ 5} Additionally, the claimant has the burden of persuading "the commission that there is a proximate causal relationship between his or her work-connected injuries and disability, and to produce medical evidence to this effect." *State ex rel. Mid-Ohio Wood Prods. v. Indus. Comm.*, 10th Dist. No. 07AP-478, 2008-Ohio-2453, ¶ 17, citing *State ex*

*rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 83 (1997). "Without medical evidence, the commission has no basis to determine the cause of a medical condition -- it simply does not have the expertise." *State ex rel. Yellow Freight Sys. v. Indus. Comm.*, 81 Ohio St.3d 56, 58 (1998).

{¶ 6}   Thus, as the magistrate correctly noted, Beyer had the burden of producing medical evidence demonstrating that his industrial injury is the proximate cause of his alleged 35 percent loss of vision in his right eye.  To meet this burden, Beyer needed to submit medical evidence of his pre-injury uncorrected vision, medical evidence of his post-injury uncorrected vision, and medical evidence of the causal connection between his injury and the vision loss.  In support of his request for compensation under R.C. 4123.57(B), Beyer submitted April 2008 and December 2011 records from Optiview and a July 2012 report of ophthalmologist James G. Ravin, M.D.  The April 2008 Optiview record indicates that ophthalmologist William G. Martin, M.D., determined Beyer's bilateral uncorrected visual acuity to be 20/20 at that time.  The November 2011 Optiview record indicates that Mahdi Basha, D.O., determined that Beyer had developed bilateral cataracts and had an uncorrected visual acuity of 20/100 in the right eye and 20/50 in the left eye.  Dr. Basha performed cataract surgery on both of Beyer's eyes in December 2011.  In July 2012, Dr. Ravin opined that Beyer's long-term use of prednisone, due to his allowed condition of bilateral silica pneumoconiosis, caused the development of his cataracts.  On August 1, 2012, the Ohio Bureau of Workers' Compensation, relying on Dr. Ravin's report, mailed an order additionally allowing the claim for bilateral cataracts.

{¶ 7}   In view of the undisputed medical evidence in the record, Beyer had a pre-injury uncorrected visual acuity of 20/20 in his right eye, and a post-injury uncorrected visual acuity of 20/100 in that eye.  The undisputed medical evidence further demonstrated that the vision loss was caused by Beyer's industrial injury.  The record before the commission also contained a copy of Table 12-2, captioned "Impairment of Visual Acuity," from the American Medical Association Guides to Evaluation of Permanent Impairment, Fifth Edition ("AMA Guides").  (Joint Stipulation of Evidence at 20958-A89.)  This table outlines visual acuity impairment ratings, as a percentage of ability lost, in relation to normal visual acuity of 20/20.  It indicates that visual acuity of 20/100 reflects a visual acuity impairment rating of 35 percent in relation to 20/20 visual acuity.

{¶ 8}  Beyer argues that the Supreme Court of Ohio's decision in *State ex rel. Spangler Candy Co. v. Indus. Comm.*, 36 Ohio St.3d 231 (1988), is instructive as to the issue of what evidence is necessary for a claimant to prove a partial loss of vision. We agree. In *Spangler*, the court found it was not an abuse of discretion for the commission to determine that, for the purpose of R.C. 4123.57(B), "the percentage of permanent partial loss of sight of an eye is calculated by subtracting the amount of vision remaining from the amount of vision existing prior to the injury and taking the percentage of the loss of sight as the calculation of actual vision loss." *Id.* at 235. In *Spangler*, the pre-injury and post-injury visual ability was already presented by a percentage by the medical evidence. As such, determining loss of vision was based on the simple calculation described above. However, when a claimant's visual acuity is presented by the medical evidence in a different format, the calculation is not the same and requires a slightly different analysis.

{¶ 9}  In *State ex rel. Lay-Z-Boy Furniture Galleries v. Thomas*, 10th Dist. No. 08AP-827, 2009-Ohio-4546, this court noted that a percentage loss of vision cannot be calculated by simply numerically comparing results of distance eye testing. For example, it would be improper to calculate the percent of vision loss by subtracting the 50 in 20/50 from the 200 in 20/200, to conclude that the percent loss of vision was 75 percent because that number, 150, is 75 percent of 200. *Id.* at ¶ 58. Even so, this court in *Lay-Z-Boy Furniture Galleries* also noted that, while such a calculation would be improper, "[c]entral visual acuity for distance as noted by a Snellen fraction can be easily converted to a percent loss of central vision by reference to tables." *Id.* at ¶ 59, citing 6A Lawyers' Medical Cyclopedia (5th Ed., LexisNexis 2006), at Section 39.21. This is what occurred here. A commission district hearing officer applied the information contained in Table 12-2 of the AMA Guides to the Snellen fractions that reflected Beyer's pre-injury and post-injury visual acuity, to conclude that Beyer had lost 35 percent of his actual vision in his right eye. The SHO and the magistrate erroneously found that Beyer needed to submit additional medical evidence to establish the percentage of vision loss for his right eye.

{¶ 10} For these reasons, we sustain Beyer's sole objection to the magistrate's decision. Based on our review of the record, we find the magistrate has properly discerned the pertinent facts. However, the magistrate erred in applying the law to those facts. Therefore, we adopt the magistrate's findings of fact but not his conclusions of law. We

grant a writ of mandamus ordering the commission to vacate the order of its SHO denying Beyer's request for R.C. 4123.57(B) compensation for the alleged permanent partial loss of sight of his right eye, and to enter an order awarding compensation for 35 percent loss of uncorrected vision in that eye.

*Objection sustained;*
*writ of mandamus granted.*

TYACK and DORRIAN, JJ., concur.

————————————

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| The State ex rel. Thomas H. Beyer, | : | |
| Relator, | : | |
| v. | : | No. 17AP-276 |
| Autoneum North America, Inc. et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on November 28, 2017

*Spitler & Williams-Young Co., L.P.A., William R. Menacher,*
and *Steven M. Spitler,* for relator.

*Michael DeWine*, Attorney General, and *Patsy A. Thomas,* for
respondent Industrial Commission of Ohio.

IN MANDAMUS

{¶ 11} In this original action, relator, Thomas H. Beyer, requests a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate the October 21, 2015 order of its staff hearing officer ("SHO") that denied relator's December 11, 2012 motion for R.C. 4123.57(B) compensation for the alleged permanent partial loss of sight of his right eye, and to enter an order awarding compensation for 35 percent loss of uncorrected vision in the right eye.

Findings of Fact:

{¶ 12} 1. On August 3, 2007, relator filed an application for workers' compensation benefits. On his application, relator alleged that he acquired an

occupational disease while employed with respondent Autoneum North America, Inc., a state-fund employer.

{¶ 13} 2. On October 11, 2007, the Ohio Bureau of Workers' Compensation ("bureau") mailed an order allowing the industrial claim (No. 06-893318) for bilateral silica pneumoconiosis.

{¶ 14} 3. The employer administratively appealed the October 11, 2007 order of the bureau.

{¶ 15} 4. Following a January 3, 2008 hearing, a district hearing officer ("DHO") issued an order affirming the bureau's order.

{¶ 16} 5. The employer administratively appealed the DHO's order of January 3, 2008.

{¶ 17} 6. Following a February 14, 2008 hearing, an SHO issued an order noting that the employer had dismissed its appeal. Therefore, the findings of the DHO's order remain in full force and effect.

{¶ 18} 7. On December 7, 2011, relator underwent cataract surgery to his right eye. The surgery was performed by Mahdi Basha, D.O.

{¶ 19} 8. On December 21, 2011, relator underwent cataract surgery to his left eye. That surgery was also performed by Dr. Basha.

{¶ 20} 9. On July 2, 2012, relator moved that his industrial claim be additionally allowed for bilateral cataracts.

{¶ 21} 10. Relator's July 2, 2012 motion prompted the bureau to request that a medical file review be prepared by ophthalmologist James G. Ravin, M.D. In his three-page narrative report dated July 26, 2012, Dr. Ravin states:

> The file indicates that the worker has pneumoconiosis and has required long-term corticosteroids to treat this. There are allegations that the cataracts were caused by the long-term use of steroids.
>
> The claimant was exposed to silica during his employment at Rieter Automotive.
>
> The file includes medical records from Optiview with notes of cataract surgery having been done. There are also many

records indicating his requirement for corticosteroids to treat his lung disease.

The first ocular examination is by Dr. Martin at Optiview on April 28, 2008. The visual acuity was 20/20 OU at that point. The anterior segments were described as clear, as was ophthalmoscopy. The diagnoses were astigmatism, presbyopia, and hypertension. The pressure was normal at 14mm/Hg right eye and 12 mm/Hg left eye.

On November 17, 2011, Mr. Beyer complained of cloudy and blurry vision for a few months. The visual acuity with correction was 20/80 -1 right eye and 20/70 -1 left eye. Through a pinhole it improved to 20/40- right eye and 20/30 left eye. The distant prescription was very weak. The pressure was normal at 17 mm/Hg right eye and 18mm/Hg left eye. Slit lamp examination was normal with the exception of nuclear and posterior subcapsular cataracts. Discussion was carried out on the ocular side effects of prednisone causing cataracts. Surgery was scheduled.

On December 7, 2011, a postoperative visit was made following cataract surgery, and the acuity without correction was 20/30 right and 20/50 left eye. On December 22, 2011, the visual acuity was 20/20 each eye without correction. The pressure was 15 mm/Hg right eye and 26 mm/Hg left eye. The last visit described appears to be in December 2011, although the photocopy is not very legible. It was just a postoperative visit for cataract surgery.

There are medical notes of the medications that Mr. Beyer had been using including prednisone.

* * *

**DISCUSSION AND OPINION**

* * *

The above quoted records indicate the patient has suffered from cataracts and has to undergo surgery to remove them.

Although cataracts can occur as a common aspect of aging, this individual has been on long-term prednisone treatment, which is a corticosteroid. Corticosteroids used long term often cause cataracts. Therefore, the medication caused a flow-

through form of effect and cataracts. The cataracts were not directly caused by the pulmonary disease of Mr. Beyer but by his medication.

{¶ 22} 11. On August 1, 2012, the bureau mailed an order additionally allowing the claim for bilateral cataracts. The bureau's order states reliance upon the July 26, 2012 report of Dr. Ravin.

{¶ 23} 12. The employer administratively appealed the bureau's August 1, 2012 order.

{¶ 24} 13. Following an October 3, 2012 hearing, a DHO issued an order affirming the additional claim allowance. The DHO's order states reliance upon the July 26, 2012 report of Dr. Ravin.

{¶ 25} 14. The employer administratively appealed the DHO's order of October 3, 2012.

{¶ 26} 15. Following a November 26, 2012 hearing, an SHO issued an order affirming the additional allowance of bilateral cataracts.

{¶ 27} 16. On December 18, 2012, another SHO mailed an order refusing the employer's appeal to the three-member commission.

{¶ 28} 17. On or about February 12, 2013, the employer filed a notice of appeal in the Lucas County Court of Common Pleas. The notice of appeal indicated that the employer appeals the November 26, 2012 order of the SHO, pursuant to R.C. 4123.512.

{¶ 29} 18. Earlier, on December 11, 2012, relator moved for an award of R.C. 4123.57(B) compensation for an alleged 35 percent loss of vision of his right eye. In support of his motion, relator cited to *State ex rel. Baker v. Coast to Coast Manpower, L.L.C.,* 129 Ohio St.3d 138, 2011-Ohio-2721.

{¶ 30} In further support of his motion, on form C-86, relator identified "4-28-08 and 11-17-11 records of Optivue [sic]; 7-26-12 BWC report by James Ravin, M.D."

{¶ 31} 19. Relator's December 11, 2012 motion for a loss of vision award prompted the bureau to have relator examined by ophthalmologist David E. Eriksen, M.D. Following his December 27, 2012 examination, Dr. Eriksen issued a two-page narrative report, stating:

This claimant was exposed to silica during his employment and that silica caused a pneumoconiosis which required long-term steroid therapy. The condition is chronic and permanent and will continue to require oral steroid use. Cataracts frequently occur as a common aspect of aging, but in a person who is on long-term corticosteroid use, they frequently cause cataracts. The types of cataracts that Mr. Beyer exhibited were of this corticosteroid-caused type. These cataracts progressed so that in 2011, it became necessary to take these cataracts out.

It is my opinion, as has been the opinion of Dr. Martin and Dr. Ravin that the medication required for his disease caused a flow-through effect ending in bilateral cataracts. That is, a flow-through effect from the silicosis from his employment.

Determining a percent of loss of vision is difficult to be specific. His visual acuity pre-injury, that is before he had disease was 20/20 in both eyes. Visual acuity in both eyes due to the cataracts gradually decreased until it was necessary to interfere with this process and do cataract extractions and intraocular lens implantation. He has done quite well postoperatively and, in fact, without correction, has 20/20 vision in each eye. I would opine, however, that this does not represent a zero loss of vision secondary to his injury. He had gradual loss of vision before surgery was done. In addition, he had to undergo bilateral surgical procedures on his eyes and must have regular examinations in the future to make sure he has no complications.

There was no information on the review of the documentation provided to me to determine why a 35% loss of vision in the right eye was requested. In addition, I have looked through the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, Chapter 12, and can find no loss of vision guidelines for this specific case of cataracts caused by long-term medication use. If those persons who have requested a 35% loss of vision in the right eye due to his employment substantiate this with documentation, I would certainly be happy to review it.

In the meantime, Chapter 12 in the AMA Guides to the Evaluation of Permanent Impairment, 5th Edition, 12.4b allows for individual adjustments and at the most, this reduction should be 15 points. Because of his gradual loss of vision and the necessity for surgery in both eyes, I would opine the maximum of 15% loss of vision for Mr. Thomas Beyer.

> I have not provided care for this claimant. I have seen this claimant one time on December 27, 2012, for the purpose of an independent medical evaluation.

{¶ 32} 19. Following a February 13, 2013 hearing, a DHO issued an order finding "there is no jurisdiction to hear" relator's December 11, 2012 motion for a loss of vision award because the employer "has now filed an appeal into court regarding the allowance upon which the Loss of Vision would be based."

{¶ 33} 20. On July 16, 2015, the employer's appeal to the Lucas County Court of Common Pleas was dismissed by agreement of the parties.

{¶ 34} 21. By letter dated August 12, 2015, relator's counsel requested that relator's December 11, 2012 motion for a vision loss award be scheduled for hearing before a DHO.

{¶ 35} 22. By letter dated September 1, 2015, relator's counsel submitted to the claim file a copy of the following described document:

> Please include * * * the attached copy of Table 12-2 from the AMA 5th Edition Guides to Evaluation of Permanent Impairment in the file folder for the captioned hearing.

{¶ 36} 23. It can be noted that the September 1, 2015 letter from relator's counsel refers to the American Medical Association Guides to the Evaluation of Permanent Impairment, Fifth Edition. Therein can be found Table 12-2 captioned "Impairment of Visual Acuity." In the conclusions of law of this decision, the magistrate refers to the "AMA Guides" or "Table 12-2 from the AMA Guides."

{¶ 37} 24. Following a September 4, 2015 hearing, a DHO issued an order awarding R.C. 4123.57(B) scheduled-loss compensation for a 35 percent loss of vision of the right eye. The DHO's order explains:

> The Injured Worker's C-86 Motion, filed 12/11/2012, requests an award for a 35% loss of vision of the right eye, pursuant to R.C. 4123.57(B).
>
> This claim was originally allowed for silica pneumoconiosis of the bilateral lungs. The Injured Worker was treated with long-term corticosteroids for that condition. He subsequently developed cataracts in both eyes and his treating physician,

William G. Martin, M.D., a board-certified ophthalmologist, stated his opinion that the bilateral cataracts were due to the side effects of the daily use of prednisone. That opinion was confirmed by an independent board-certified ophthalmologist, James G. Ravin, M.D., who examined the Injured Worker on behalf of the Bureau of Workers' Compensation on 07/26/2012. Therefore, this claim was additionally allowed for the condition of bilateral cataracts, pursuant to the Industrial Commission order of 11/26/2012, published 11/28/2012.

The medical records from William G. Martin, M.D., indicate that the Injured Worker had 20/20 visual acuity in both eyes at the time of his examination on 04/28/2008. Thus, it is the finding of this District Hearing Officer that the Injured Worker's pre-injury visual acuity was 20/20 or better.

However, the Injured Worker's visual acuity decreased, over time, due to the development of his cataracts. On 11/17/2011, the Injured Worker's uncorrected vision was 20/100 in the right eye and 20/50 in the left eye.

It is the further finding of this District Hearing Officer that the *AMA Guides to the Evaluation of Permanent Impairment,* at Table 12-2 Impairment of Visual Acuity, indicate that uncorrected vision of 20/100 is a "Visual Acuity Impairment Rating (%) (ability loss)" of 35%.

Therefore, it is the finding of this District Hearing Officer that the Injured Worker's *post-injury* loss of vision in the right eye is 35%.

Therefore, it is the order of this District Hearing Officer that the Injured Worker is hereby GRANTED an award for permanent partial loss of sight of the right eye in the amount of 43.75 weeks of compensation pursuant to R.C. 4123.57(B), based upon the pro-rata apportionment of the total 125 weeks award for the loss of vision of one eye times the 35% loss of vision determined above.

(Emphasis sic and omitted.)

{¶ 38} 25. The employer administratively appealed the September 4, 2015 order of the DHO.

{¶ 39} 26. Following an October 21, 2015 hearing, an SHO issued an order that vacates the DHO's order of September 4, 2015 and denies relator's December 11, 2012 motion for a loss of vision award. The SHO's order explains:

> The Staff Hearing Officer finds the file does not contain sufficient evidence to support the Injured Worker's request for 35% loss of vision right eye.
>
> The file contains medical records from William Martin, M.D. which show that the Injured Worker had bilateral visual acuity of 20/20 when examined on dated [sic] 04/28/2008. The file also contains an Optivue [sic] examination of the Injured Worker from 11/17/2011 showing the Injured Worker had uncorrected vision of 20/100 in the right eye and 20/50 in the left eye. The claim is allowed for bilateral cataracts due to the Injured Worker's use of Prednisone for the allowed conditions in the claim pursuant to Industrial Commission order 11/26/2012.
>
> The file does not contain an explanation by a qualified physician that would support the percentage award that Injured Worker requests. The legal standard for a loss of vision award is the percentage of vision actually lost when comparing pre-injury vision to post-injury vision prior to any corrective treatment. The file does not currently contain any medical evidence that supports a percentage award. The file was reviewed by David Eriksen, M.D. on 12/27/2012 for the Bureau of Workers' Compensation, however Dr. Eriksen did not compare the Injured Worker's pre-injury vision to his post-injury vision prior to corrective treatment. Dr. Eriksen opines a 15% loss of vision award which is not the 25% loss of uncorrected vision that is required by R.C. 4123.57.
>
> As the claim does not currently contain a percentage evaluation by a medical professional, the Hearing Officer finds the Injured Worker's request is denied. The order of the District Hearing Officer is vacated.

{¶ 40} 27. On November 24, 2015, another SHO mailed an order refusing relator's appeal from the October 21, 2015 order of the SHO.

{¶ 41} 28. On March 25, 2016, at the request of relator's counsel, William Martin, M.D., completed a two-page "Questionnaire" presumably prepared by relator's counsel.

The "Questionnaire" poses two questions for Dr. Martin. By his mark, Dr. Martin selected the "yes" answer for the following two questions:

> **Question No. 1:** Based upon your evaluations of Mr. Beyer and consideration of the above, was Mr. Beyer's loss of visual acuity bilaterally as measured between April, 2008 and November, 2011 secondary to the development of cataracts bilaterally?
>
> **Question No. 2:** Taking into consideration the enclosed Table 12-2 of the Guides to the Evaluation of Permanent Impairment, Fifth Addition [sic], does Mr. Beyer's uncorrected visual acuity as of November, 2011, as measured against his uncorrected visual acuity as reported in April, 2008, demonstrate a visual acuity impairment rating percentage of 35%?

(Emphasis sic.)

{¶ 42} 29. On October 27, 2016, relator moved for the commission's exercise of continuing jurisdiction over the SHO's order of October 21, 2015. In support, relator submitted the "Questionnaire" completed by Dr. Martin on March 25, 2016.

{¶ 43} 30. Following a November 28, 2016 hearing, a DHO issued an order denying relator's October 27, 2016 motion for the exercise of continuing jurisdiction.

{¶ 44} 31. Relator administratively appealed the DHO's order of November 28, 2016.

{¶ 45} 32. Following a January 19, 2017 hearing, an SHO issued an order that affirms the DHO's order of November 28, 2016 and denies relator's motion for the exercise of continuing jurisdiction. The SHO's order explains:

> It is the finding of this Staff Hearing Officer that the answers to the questionnaire completed by William Martin, M.D., on 03/25/2016, was evidence which, by due diligence, could have been discovered and filed by the Injured Worker *prior to* the date of the Staff Hearing Officer's hearing conducted on 10/21/2015.
>
> Therefore, it is the finding of this Staff Hearing Officer that the Injured Worker failed to meet his burden of proving one of the five prerequisites for the exercise of continuing jurisdiction, pursuant to R.C. 4123.52.

Therefore, it is the order of this Staff Hearing Officer that the Injured Worker's request to exercise continuing jurisdiction is hereby DENIED.

(Emphasis sic and omitted.)

{¶ 46} 33. On February 15, 2017, following a review by two SHO's, an SHO issued an order refusing relator's appeal from the SHO's order of January 19, 2017. The order explains:

This appeal was reviewed by two (2) Staff Hearing Officers on behalf of the Commission. Both Staff Hearing Officers concur with this decision.

{¶ 47} 34. On April 20, 2017, relator, Thomas H. Beyer, filed this mandamus action.

Conclusions of Law:

{¶ 48} As earlier noted, on December 11, 2012, relator moved for an R.C. 4123.57(B) award for an alleged 35 percent loss of vision of the right eye. In support, relator submitted the April 28, 2008 and November 17, 2011 records from Optiview and the July 26, 2012 report of Dr. Ravin.

{¶ 49} The April 28, 2008 Optiview record indicates that relator demonstrated 20/20 visual acuity without refractive correction in both eyes on that date. The April 28, 2008 Optiview record indicates that relator was a patient of Dr. Martin on that date.

{¶ 50} The November 17, 2011 Optiview record indicates that relator demonstrated post-injury 20/100 visual acuity without refractive correction in the right eye on that date. Also, relator demonstrated post-injury 20/50 visual acuity without refractive correction in the left eye. The November 17, 2011 Optiview record indicates that relator was the patient of Dr. Basha on that date.

{¶ 51} It can be noted that the November 17, 2011 Optiview record predates the December 7, 2011 cataract surgery performed on the right eye by Dr. Basha.

{¶ 52} It can be further noted that relator's C-86 motion, filed December 11, 2012, fails to list Table 12-2 from the AMA Guides for supporting evidence or documentation. Relator's counsel did not reference the AMA Guides until his September 1, 2015 letter to

the bureau. Thus, when Dr. Eriksen examined relator on December 27, 2012 at the bureau's request, relator had not yet referenced Table 12-2 as support for his motion. However, Dr. Eriksen did indicate in his report that he had looked through the AMA Guides but he could find "no loss of vision guidelines for the specific case of cataracts caused by long-term medication use."

{¶ 53} In addition to the foregoing, it can be noted that, in her order of October 21, 2015, the SHO held that "the file does not contain sufficient evidence to support [relator's] request for 35% loss of vision right eye." The SHO further held that "[t]he file does not contain an explanation by a qualified physician that would support the percentage award that [relator] requests."

{¶ 54} Given the above scenario, the main issue here is whether the SHO of October 21, 2015 abused her discretion in refusing to make her own determination based upon Table 12-2 as to whether relator shall be awarded a 35 percent vision loss. That is, did the SHO abuse her discretion in requiring that a determination of vision loss under Table 12-2 be supported by a medical opinion from a qualified physician.

{¶ 55} Finding that the SHO did not abuse her discretion in denying a partial loss of vision award for the failure of relator to support his motion with medical evidence from a qualified physician, it is the magistrate's decision that this court deny relator's request for a writ of mandamus, as more fully explained below.

### Basic Law—Loss of Vision

{¶ 56} R.C. 4123.57(B) sets forth a schedule for the payment of compensation for the loss of a body member. It provides:

> For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.

{¶ 57} "The loss of vision is determined by the measurement of uncorrected vision following the injury, but prior to any corrective surgery such as a lens implant or cornea transplant." *Baker,* plurality opinion at ¶ 16 citing *State ex rel. La-Z-Boy Furniture*

*Galleries v. Thomas,* 126 Ohio St.3d 134, 2010-Ohio-3215, ¶ 16 and *State ex rel. Gen. Elec. Corp. v. Indus. Comm.*, 103 Ohio St.3d 420, 2004-Ohio-5585, ¶ 16.

### Basic Law—Burden of Proof

**{¶ 58}** "The claimant's burden is to persuade the commission that there is a proximate causal relationship between his work-connected injuries and disability, and to produce medical evidence to this effect." *State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 83 (1997).

**{¶ 59}** "Without medical evidence, the commission has no basis to determine the cause of a medical condition—it simply does not have the expertise." *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 58 (1998).

**{¶ 60}** "[T]he appropriate standard of proof in mandamus cases is proof by clear and convincing evidence." *State ex rel. Doner v. Zody,* 130 Ohio St.3d 446, 2011-Ohio-6117, ¶ 55, citing *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141, 161 (1967). Thus, in mandamus, the relator must prove his entitlement to the writ by clear and convincing evidence. *Doner* at ¶ 57.

### Analysis

**{¶ 61}** In the instant case, relator had the burden of producing medical evidence that his industrial injury is the proximate cause of his alleged 35 percent loss of vision in his right eye. *Quarto.* The burden of producing medical evidence extended to the use of the AMA Guides (and presumably Table 12-2) in determining the percentage of vision lost due to the industrial injury.

**{¶ 62}** Because the commission and its hearing officers do not have medical expertise, they cannot by themselves, use the AMA Guides in determining a percentage of vision loss.

**{¶ 63}** Although the commission and its hearing officers have the duty to determine the weight and credibility to be given to the medical reports admitted into evidence, *State ex rel. Burley v. Coil Packing, Inc.*, 31 Ohio St.3d 18, 21 (1987), they cannot render their own opinion as a substitute for a medical opinion from a "qualified physician" that determines the percentage of vision lost due to the industrial injury. *Yellow Freight.*

{¶ 64} Because relator failed to produce medical evidence or opinion that applies Table 12-2 of the AMA Guides to the visual acuity data of record, relator failed to meet his burden before the commission. *Foreman.*

{¶ 65} Likewise, relator has failed to show his entitlement to the writ by clear and convincing evidence. *Doner.*

{¶ 66} Accordingly, for all the above reasons, it is the magistrate's decision that this court deny his request for a writ of mandamus.


/S/ MAGISTRATE
KENNETH W. MACKE


**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b).