**[Cite as *State ex rel. Kreitzer v. Indus. Comm.*, 2025-Ohio-281.]**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Rodney Kreitzer, | : | |
| Relator, | : | No. 22AP-601 |
| v. | : | (REGULAR CALENDAR) |
| Industrial Commission of Ohio et al., | : | |
| Respondents. | : | |

D E C I S I O N

Rendered on January 30, 2025

**On brief:** *Knisley Law Offices, Kurt A. Knisley*, and *Daniel S. Knisley*, for relator.

**On brief:** *Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

**On brief:** *Faruki PLL, Brian D. Wright*, and *Sergio G. Fernandez*, for respondent Henny Penny Corporation.

IN MANDAMUS
ON OBJECTION TO THE MAGISTRATE'S DECISION

EDELSTEIN, J.

{¶ 1} Relator, Rodney Kreitzer, initiated this original action requesting this court issue a writ of mandamus ordering respondent, the Industrial Commission of Ohio ("commission"), to vacate its order denying his request for an increase in his scheduled-loss award for the loss of sight in his right eye, pursuant to R.C. 4123.57(B), and to enter an order granting the compensation he requests.

{¶ 2} Pursuant to Civ.R. 53(C) and Loc.R. 13(M) of the Tenth District Court of Appeals, we referred this matter to a magistrate. After receiving briefing and stipulated evidence from the parties, the magistrate issued the appended decision on September 27,

2024, including findings of fact and conclusions of law, recommending that we deny Mr. Kreitzer's petition for a writ of mandamus.

{¶ 3} Mr. Kreitzer now objects to some of the magistrate's conclusions of law, as discussed in our analysis below. His objections were timely filed under Civ.R. 53(D)(3)(b). We must therefore independently review the objected to matters and evaluate whether "the magistrate has properly determined the factual issues and appropriately applied the law." Civ.R. 53(D)(4)(d).

{¶ 4} Mr. Kreitzer does not object to the magistrate's findings of fact. (*See* Oct. 8, 2024 Obj. at 1.) Having reviewed the record and the magistrate's factual findings—and in the absence of any objection thereto—we find no error in the magistrate's determinations of the facts and thus adopt them as our own.

## I.   MANDAMUS STANDARD AND STANDARD OF REVIEW

{¶ 5} An order of the commission that grants or denies scheduled-loss compensation sought under R.C. 4123.57(B) concerns the extent of a claimant's disability and, as such, is not subject to appeal. *See, e.g.*, *State ex rel. Kroger Co. v. Stover*, 31 Ohio St.3d 229 (1987), paragraph one of the syllabus; R.C. 4123.512(A). Thus, such order must be challenged in a mandamus action. *See id.*

{¶ 6} Mr. Kreitzer is entitled to a writ of mandamus if he shows by clear and convincing evidence that he has a clear legal right to the requested relief, that the commission has a clear legal duty to provide that relief, and that he has no adequate remedy in the ordinary course of the law. *State ex rel. Ottinger v. B&B Wrecking & Excavating, Inc.*, 175 Ohio St.3d 186, 2024-Ohio-1656, ¶ 14, citing *State ex rel. Zarbana Indus., Inc. v. Indus. Comm.*, 166 Ohio St.3d 216, 2021-Ohio-3669, ¶ 10.

{¶ 7} A writ of mandamus may lie when there is a legal basis to compel the commission to perform its duties under the law or when the commission has abused its discretion in carrying out its duties. *Ottinger* at ¶ 16, citing *State ex rel. Gen. Motors Corp. v. Indus. Comm.*, 117 Ohio St.3d 480, 2008-Ohio-1593, ¶ 9. We are not required to defer to an administrative agency's interpretation of a statute enacted by the General Assembly or application of case law issued by Ohio courts. *See TWISM Ents., L.L.C. v. State Bd. of Registration for Professional Engineers & Surveyors*, 172 Ohio St.3d 225, 2022-Ohio-4677, ¶ 3. However, we "will not order the commission to vacate its decision if the decision is supported by some evidence." *State ex rel. Neitzelt v. Indus. Comm.*, 160 Ohio St.3d 175,

2020-Ohio-1453, ¶ 23.  Thus, " '[w]here a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion.' " *Ottinger* at ¶ 16, quoting *State ex rel. Mobley v. Indus. Comm.*, 78 Ohio St.3d 579, 584 (1997).

{¶ 8}  "[A]buse of discretion connotes that the court's attitude is unreasonable, arbitrary or unconscionable."  (Internal quotations omitted.)  *State v. Weaver*, 171 Ohio St.3d 429, 2022-Ohio-4371, ¶ 24, quoting *State v. Gondor*, 112 Ohio St.3d 377, 2006-Ohio-6679, ¶ 60, quoting *State v. Adams*, 62 Ohio St.2d 151, 157 (1980).  "A decision is unreasonable if there is no sound reasoning process that would support the decision." (Internal quotations omitted.)  *Fernando v. Fernando*, 10th Dist. No. 16AP-788, 2017-Ohio-9323, ¶ 7, quoting *AAAA Ents., Inc. v. River Place Community Urban Redevelopment Corp.*, 50 Ohio St.3d 157, 161 (1990).  A decision is arbitrary if it is made "without consideration of or regard for facts [or] circumstances."  (Internal quotations omitted.) *State v. Hill*, 171 Ohio St.3d 524, 2022-Ohio-4544, ¶ 9, quoting *State v. Beasley*, 152 Ohio St.3d 470, 2018-Ohio-16, ¶ 12, quoting *Black's Law Dictionary* 125 (10th Ed.2014).  A decision may also be arbitrary if it lacks any adequate determining principle and is not governed by any fixed rules or standards.  *See Beasley* at ¶ 12, citing *Dayton ex rel. Scandrick v. McGee*, 67 Ohio St.2d 356, 359 (1981), quoting *Black's Law Dictionary* 96 (5th Ed.1979).  *See also State v. Hackett*, 164 Ohio St.3d 74, 2020-Ohio-6699, ¶ 19.  A decision is unconscionable if it "affronts the sense of justice, decency, or reasonableness." *Fernando* at ¶ 7, citing *Porter, Wright, Morris & Arthur, LLP v. Frutta Del Mondo, Ltd.*, 10th Dist. No. 08AP-69, 2008-Ohio-3567, ¶ 11.

{¶ 9}  On purely legal questions, we apply de novo review.  *New Asian Super Mkt. v. Weng*, 10th Dist. No. 17AP-207, 2018-Ohio-1248, ¶ 16.

## II.  ANALYSIS

{¶ 10} Through his objections, Mr. Kreitzer argues the magistrate erroneously concluded the commission acted within its discretion in finding that he was not entitled to an increase in his scheduled-loss award for the total loss of vision in his right eye.  We disagree.

{¶ 11} R.C. 4123.57 governs partial disability compensation.  R.C. 4123.57(B) sets forth rates of compensation for the loss or loss of use of listed body parts and functions.

Scheduled-loss compensation payable to an injured worker for loss of sight is authorized as follows:

> For the loss of the sight of an eye, one hundred twenty-five weeks.
>
> For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five per cent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.

R.C. 4123.57(B).

{¶ 12} R.C. 4123.57(B) therefore authorizes scheduled loss-of-vision awards in two circumstances: one for the ***total*** "loss of sight of an eye," regardless of the percentage of vision lost, and another for the "permanent ***partial*** loss of sight of an eye," which depends on the percentage of vision lost. (Emphasis added.) *State ex rel. Cogan v. Indus. Comm.*, 174 Ohio St.3d 80, 2023-Ohio-3567, ¶ 15, quoting *State ex rel. Beyer v. Autoneum N. Am.*, 157 Ohio St.3d 316, 2019-Ohio-3714, ¶ 18.

{¶ 13} This case involves a workplace injury Mr. Kreitzer sustained on December 21, 1982 that resulted in loss of vision in his right eye. (Stip. Evid. at 5, 39-41.) Mr. Kreitzer received an initial scheduled-loss award of 25.8 percent in 1983. (Stip. Evid. at 6-14.) On March 13, 2008, Mr. Kreitzer filed a C-86 motion seeking an increase in his scheduled-loss award. (Stip. Evid. at 55.) In support of that motion, Mr. Kreitzer submitted records from his treating ophthalmologists, including an operative report dated April 29, 2008 documenting the details of a surgical procedure performed by Dr. Michael A. Snyder that resulted in removal of the lens of Mr. Kreitzer's right eye. (*See* Stip. Evid. at 47-85.) At the request of the Bureau of Workers' Compensation ("BWC"), Mr. Kreitzer was examined on July 16, 2008 by Dr. Richard Roebuck for a loss-of-vision review. (*See* Stip. Evid. at 26-27, 103-07.) Based on Dr. Roebuck's July 25, 2008 report summarizing his loss-of-vision findings following examination, the BWC issued an order in August 2008 finding a 33 percent uncorrected loss of vision in his right eye. (*See* Stip. Evid. at 28-29.) The record does not reflect an appeal from that order.

{¶ 14} In March 2022, Mr. Kreitzer filed a C-86 motion requesting compensation for total loss of vision—i.e., an increase from the prior August 2008 award—based on Dr. Snyder's April 2008 report (the "March 2022 motion"). (*See* Stip. Evid. at 44, 47-48.) The BWC referred the claim to the commission for a hearing on that motion. (Stip. Evid. at 36.) Following the June 8, 2022 hearing on Mr. Kreitzer's March 2022 motion, the District Hearing Officer ("DHO") entered an order on June 10, 2022 noting the case on which Mr. Kreitzer's March 2022 motion for a total loss-of-vision award relied, *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, was issued in February 2008, months **before** the BWC entered its August 2008 scheduled-loss award order. (*See* Stip. Evid. at 37-38.) The DHO also found that because Mr. Kreitzer had not submitted medical evidence of a new and changed circumstance to support an additional loss-of-vision award since the August 2008 order was entered, his March 2022 motion was barred by res judicata. (Stip. Evid. at 37-38.)

{¶ 15} Mr. Kreitzer appealed from the DHO's June 2022 order on June 15, 2022. (*See* Stip. Evid. at 108.) While that appeal was pending, he filed another C-86 motion on June 30, 2022 "requesting continuing jurisdiction under the basis of a mistake of law" in the August 2008 order (the "June 2022 motion"). (Stip. Evid. at 46.) Specifically, he alleged the BWC's August 2008 order finding a 33 percent uncorrected loss of vision in his right eye "fail[ed] to comply" with *Autozone.* (Stip. Evid. at 46.)

{¶ 16} Pursuant to R.C. 4123.52, the commission has continuing jurisdiction over a case and may modify or change its former findings or orders if the commission finds that a change is justified. "Continuing jurisdiction is not unlimited; a party seeking to invoke the commission's continuing jurisdiction must show (1) new and changed circumstances, (2) fraud, (3) a clear mistake of fact or law, or (4) an error by an inferior tribunal." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 7, citing *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 459 (1998). In contrast, Mr. Kreitzer's March 2022 motion did not request continuing jurisdiction on the basis of a mistake of law. (*See* Stip. Evid. at 44.)

{¶ 17} Mr. Kreitzer's appeal from the DHO's June 2022 order denying his March 2022 motion was heard by a Staff Hearing Officer ("SHO") on July 29, 2022. (Stip. Evid. at 39-40.) On August 3, 2022, the SHO entered an order finding that Mr. Kreitzer "failed

to satisfy his burden of proving by a preponderance of the evidence that he sustained an increase in the loss of vision of the right eye to include the total loss of vision to the right eye" due to industrial injury because he "has not provided sufficient medical evidence supporting" the requested increase. (Stip. Evid. at 40.) Thus, the SHO denied Mr. Kreitzer's March 2022 motion without addressing the merits of the "mistake-of-law" arguments raised in Mr. Kreitzer's June 2022 motion, as Mr. Kreitzer's June 2022 motion was not before the SHO in that appeal.

{¶ 18} In objecting to the magistrate's decision, Mr. Kreitzer's primary contention is that the magistrate erred in concluding there "was no evidence in the record demonstrating that continuing jurisdiction was invoked by [him] during the administrative process." (Obj. at 2-3.) But, on review of the record, his arguments are not compelling. Given that Mr. Kreitzer's June 2022 motion requesting the commission exercise continuing jurisdiction was filed 15 days *after* he appealed from the DHO's June 10, 2022 order (*see* Stip. Evid. at 39, 45-46, 108), it follows that his June 2022 motion was not adjudicated by the SHO in the August 2022 order that is the subject of the mandamus complaint Mr. Kreitzer filed in this case. (*See* Sept. 30, 2022 Compl. at ¶ 5-9; Stip. Evid. at 39-41, 44.)

{¶ 19} Significantly, Mr. Kreitzer's March 2022 motion did not request the commission exercise its continuing jurisdiction on the basis of a purported mistake of law in the BWC's August 2008 order. (*See* Stip. Evid. at 44.) Mr. Kreitzer does not cite to any authority supporting his position that the commission was *obligated* to exercise continuing jurisdiction over this issue sua sponte. (*See* Obj. at 3-4.) *See, e.g., State ex rel. Manns v. Indus. Comm.*, 39 Ohio St.3d 188, 190 (1988), citing *State ex rel. Gatlin v. Yellow Freight Sys., Inc.*, 18 Ohio St.3d 246 (1985), syllabus ("The commission has the right under R.C. 4123.52 to exercise its discretionary review power *sua sponte*. It has inherent power to reconsider an order for a reasonable time after it is issued, unless restricted by statute or administrative regulations, regardless of whether an appeal from the order is provided by statute.").

{¶ 20} Moreover, as the magistrate noted, the record does not contain—and Mr. Kreitzer's mandamus complaint did not purport to challenge—a final order from the commission resolving Mr. Kreitzer's June 2022 motion for continuing jurisdiction. (*See* Appended Mag.'s Decision at ¶ 47.) As such, we find the magistrate correctly limited the

scope of his review to Mr. Kreitzer's March 2022 motion when he concluded the SHO appropriately determined that Mr. Kreitzer failed to submit any new medical evidence to support an increase in his loss of vision. (*See* Appended Mag.'s Decision at ¶ 47-54.)

{¶ 21} Mr. Kreitzer also takes issue with the magistrate's resolution of his arguments regarding purported mistakes of fact and/or law in Dr. Roebuck's July 25, 2008 report. (*See* Obj. at 3-4.) Specifically, he contends the magistrate "failed to consider whether Dr. Roebuck's evident failure to follow the directions prescribed by the [BWC], and the [commission's] subsequent neglect to correct the record, constituted an abuse of discretion." (Obj. at 3.) However, as the magistrate correctly noted, nothing in the record before us suggests Mr. Kreitzer raised any issues regarding the propriety of the findings in Dr. Roebuck's report to the commission in the first instance or otherwise attempted to invoke the continuing jurisdiction of the commission on the basis of such alleged errors in the proceedings related to his March 2022 motion. (*See* Appended Mag.'s Decision at ¶ 55.) In the absence of such evidence, the magistrate correctly concluded it would be inappropriate for us to address this matter in this mandamus action in the first instance. *See, e.g.*, *State ex rel, Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 81-82 (1997); *State ex rel. Coseno v. Indus. Comm.*, 10th Dist. No. 16AP-151, 2017-Ohio-8973, ¶ 11.

{¶ 22} Based on the foregoing, we overrule Mr. Kreitzer's objections to the magistrate's decision.

## III. DISPOSITION

{¶ 23} After an examination of the magistrate's decision, an independent review of the record pursuant to Civ.R. 53, and due consideration of Mr. Kreitzer's objections and the parties' arguments, we overrule Mr. Kreitzer's objections and adopt the magistrate's decision as our own, including the findings of fact and conclusions of law contained therein. In accordance with the magistrate's decision, we deny the requested writ.

*Objections overruled*;
*writ of mandamus denied.*

DORRIAN and LELAND, JJ., concur.

**APPENDIX**

IN THE COURT OF APPEALS OF OHIO

TENTH APPELLATE DISTRICT

| | | |
|---|---|---|
| State ex rel. Rodney Kreitzer, | : | |
| Relator, | : | |
| v. | : | No. 22AP-601 |
| Industrial Commission of Ohio et al., | : | (REGULAR CALENDAR) |
| Respondents. | : | |

M A G I S T R A T E ' S   D E C I S I O N

Rendered on September 27, 2024

*Kurt A. Knisley*, and *Daniel S. Knisley*, for relator.

*Dave Yost*, Attorney General, and *Denise A. Corea*, for respondent Industrial Commission of Ohio.

*Faruki PLL, Brian D. Wright*, and *Sergio G. Fernandez*, for respondent Henny Penny Corporation.

IN MANDAMUS

{¶ 24} Relator Rodney Kreitzer seeks a writ of mandamus ordering respondent Industrial Commission of Ohio ("commission") to vacate its order denying Kreitzer's motion for scheduled-loss compensation and issue a new order granting such compensation. For the following reasons, it is the decision and recommendation of the magistrate that Kreitzer's request for a writ of mandamus should be denied.

## I. Findings of Fact

{¶ 25} 1. Kreitzer sustained an injury to his right eye on December 21, 1982 in the course of and arising out of his employment with respondent Henny Penny Corporation

when his right eye was struck by a metal rod. Kreitzer's claim was ultimately allowed for the following conditions: contusion right eye, visual loss right eye, visual discomfort right eye, recession right chamber angle, traumatic cataract-right, zonular dialysis-right, traumatic mydriasis-right.

{¶ 26} 2. On July 20, 1983, Kreitzer received a scheduled-loss award based on a finding of a 25.8 percent loss of vision in his right eye.

{¶ 27} 3. In a C-86 motion dated March 13, 2008, Kreitzer, through counsel, sought an increase in the scheduled-loss award for loss of sight in his right eye.

{¶ 28} 4. In an April 29, 2008 operative report, Michael E. Snyder, M.D., documented the details of a surgical procedure on Kreitzer's right eye. The procedure was described as follows: (1) "Phacoemulsification with posterior chamber intraocular lens placement OD"[1]; (2) "Iris repair with sutures OD"; (3) "Presbyopia reducing implant lens OD"; and (4) "Limbal relaxing incision adjustment of irregular astigmatism with keratoconus OD." (Stip. at 47.) The note indicates that Kreitzer's "lens nucleus was * * * emulsified" and the "remaining cortical material was removed." (Stip. at 47.)

{¶ 29} 5. At the request of the Bureau of Workers' Compensation ("BWC"), Kreitzer was examined on July 16, 2008 by Richard Roebuck, M.D., for purposes of performing a loss of vision review. Dr. Roebuck found that "the uncorrected acuities of the left eye at the time of [Kreitzer's] current exam would equate to a 65 percent loss of central vision" and the "uncorrected visual acuities in the right eye at this time and accounting for an additional loss due to pseudophakia would equate to a 99 percent loss of central vision." (Stip. at 106.) Dr. Roebuck concluded that "[t]he difference between these figures would be a 34 percent loss of central vision in the right eye attributable to the industrial injury of December 21, 1982." (Stip. at 107.)

{¶ 30} 6. In an order mailed August 18, 2008, the BWC found Kreitzer had sustained a 33 percent uncorrected loss of vision in his right eye based on the July 25, 2008 report of Dr. Roebuck. The record does not reflect an appeal from this order.

---

[1] In this context, "OD," an abbreviation of the Latin phrase "oculus dexter," is used to indicate "right eye." *See, e.g., Rua v. California Corr. Health Care Servs.*, C.D.Cal. No. 2:19-cv-06115-CJC-KES, 2020 U.S. Dist. LEXIS 77309, *4 (Mar. 27, 2020), fn. 4.

{¶ 31} 7. Considering a request for treatment that was filed on October 4, 2011,[2] the BWC granted reactivation of the claim in an order issued October 14, 2011. The BWC found that "a causal relationship between the original injury and the current incident causing the medical treatment request has been reestablished." (Stip. at 34.) As a result, the BWC allowed the request for treatment for ophthalmologic services.

{¶ 32} 8. On March 15, 2022, Kreitzer, through counsel, filed a C-86 motion requesting the granting of compensation for "total loss of vision of the right eye – based upon the [April 29, 2008] report of Michael E. Snyder, M.D." (Stip. at 44.)

{¶ 33} 9. The BWC referred Kreitzer's March 15, 2022 motion to the commission on April 29, 2022. The BWC recommended denial of the motion based on the lack of medical evidence of a new or changed circumstance to support an additional loss of vision award since the August 18, 2008 BWC order.

{¶ 34} 10. On June 8, 2022, commission district hearing officer ("DHO") conducted a hearing on Kreitzer's March 15, 2022 motion. In an order mailed June 10, 2022, the DHO denied Kreitzer's motion on the basis of res judicata.

{¶ 35} 11. On June 30, 2022, Kreitzer, through counsel, filed a second C-86 motion "requesting continuing jurisdiction under basis of a mistake of law in the [August 18, 2008] Order. The [August 18, 2008] order fails to comply with *State ex[] rel. Autozone, Inc. [v.] Ohio Industrial Commission*." (Stip. at 46.) The record does not contain any orders of the BWC or commission that resolved this June 30, 2022 motion.

{¶ 36} 12. On July 29, 2022, a commission staff hearing officer ("SHO") conducted a hearing on Kreitzer's appeal from the June 10, 2022 DHO order. In an order mailed August 3, 2022, the SHO vacated the DHO's order and denied Kreitzer's March 15, 2022 motion. The SHO recounted the history of Kreitzer's prior scheduled-loss awards, noting that the August 18, 2008 BWC order was based on Dr. Roebuck's July 25, 2008 report, in which Dr. Roebuck "considered an operative report by [Dr. Snyder] dated [April 29, 2008]." (Stip. at 39.) In denying the March 15, 2022 motion, the SHO made the following findings:

> The [SHO] finds [Kreitzer] has failed to satisfy his burden of proving by a preponderance of the evidence that he sustained

---

[2] Neither the request for treatment nor the supporting medical documentation appears in the record in this matter.

an increase in the loss of vision of the right eye to include the total loss of vision of the right eye as a result of the 12/21/1982 industrial injury in this claim. The [SHO] finds [Kreitzer] has not provided sufficient medical evidence supporting that he has sustained an increase in the loss of vision of the right eye to include the total loss of vision of the right eye as a result of the 12/21/1982 industrial injury in this claim.

(Stip. at 40.) The SHO did not address Kreitzer's June 30, 2022 motion for continuing jurisdiction.

{¶ 37} 13. Kreitzer's appeal of the SHO's August 3, 2022 order was refused by the commission on August 23, 2022.

{¶ 38} 14. Kreitzer commenced this action in mandamus with the filing of his petition and complaint on September 30, 2022.

## II. Discussion and Conclusions of Law

{¶ 39} Kreitzer seeks a writ of mandamus compelling the commission to vacate the August 3, 2022 SHO order and issue a new order granting Kreitzer scheduled-loss compensation for loss of sight in his right eye.

## A. Requirements for Mandamus

{¶ 40} In order for this court to issue a writ of mandamus as a remedy from a determination of the commission, Kreitzer must establish a clear legal right to the requested relief, that the commission has a clear legal duty to provide such relief, and the lack of an adequate remedy in the ordinary course of the law. *State ex rel. Pressley v. Indus. Comm.*, 11 Ohio St.2d 141 (1967). A writ of mandamus will issue where "there is a legal basis to compel the commission to perform its clear legal duty under the law, including when the commission has abused its discretion in carrying out its duties." *State ex rel. Belle Tire Distribs. v. Indus. Comm.*, 154 Ohio St.3d 488, 2018-Ohio-2122, ¶ 25. "Where a commission order is adequately explained and based on some evidence, even evidence that may be persuasively contradicted by other evidence of record, the order will not be disturbed as manifesting an abuse of discretion." *State ex rel. Mobley v. Indus. Comm. of Ohio*, 78 Ohio St.3d 579, 584 (1997). Additionally, a writ of mandamus " 'may issue against the Industrial Commission if the commission has incorrectly interpreted Ohio law.' " *State ex rel. Cassens Corp. v. Indus. Comm. of Ohio*, 174 Ohio St.3d 414, 2024-Ohio-526, ¶ 10, quoting *State ex rel. Gassmann v. Indus. Comm.*, 41 Ohio St.2d 64, 65 (1975).

**B. Scheduled-Loss Claims Under R.C. 4123.57(B)**

{¶ 41} "R.C. 4123.57(B) provides for scheduled-loss compensation that is paid to an injured worker for the loss of a body part as listed in the schedule." *State ex rel. Coleman v. Indus. Comm. of Ohio*, 136 Ohio St.3d 77, 2013-Ohio-2406, ¶ 16. The statute "specifies, to some degree, how loss is measured, based on the anatomy of the affected [body part]." *State ex rel. Riter v. Indus. Comm.*, 91 Ohio St.3d 89, 90 (2001). In pertinent part, R.C. 4123.57(B) provides:

> In cases included in the following schedule the compensation payable per week to the employee is the statewide average weekly wage * * * and shall be paid in installments according to the following schedule:
>
> * * *
>
> For the loss of the sight of an eye, one hundred twenty-five weeks.
>
> For the permanent partial loss of sight of an eye, the portion of one hundred twenty-five weeks as the administrator in each case determines, based upon the percentage of vision actually lost as a result of the injury or occupational disease, but, in no case shall an award of compensation be made for less than twenty-five percent loss of uncorrected vision. "Loss of uncorrected vision" means the percentage of vision actually lost as the result of the injury or occupational disease.

R.C. 4123.57(B). Thus, "R.C. 4123.57(B) contains two provisions authorizing scheduled loss-of-vision awards: one for the total 'loss of sight of an eye,' regardless of the percentage of vision lost, and another for the 'permanent partial loss of sight of an eye,' which depends on the percentage of vision lost." *State ex rel. Beyer v. Autoneum N. Am.*, 157 Ohio St.3d 316, 2019-Ohio-3714, ¶ 18. "The question under R.C. 4123.57(B) is whether a claimant has suffered loss of sight or partial loss of sight." *State ex rel. AutoZone, Inc. v. Indus. Comm.*, 117 Ohio St.3d 186, 2008-Ohio-541, ¶ 18.

{¶ 42} "[A]n award for total loss of sight may be supported by medical evidence of postinjury vision loss that renders a claimant 'legally blind' (i.e., having a corrected visual acuity of 20/200 or less)." *State ex rel. Cogan v. Indus. Comm.*, 174 Ohio St.3d 80, 2023-Ohio-3567, ¶ 15. "The statutory standard for measuring a partial loss of sight is 'the

percentage of vision actually lost as a result of the injury.' " *Beyer* at ¶ 10, quoting R.C. 4123.57(B).

{¶ 43} The standard under R.C. 4123.57(B) for assessing postinjury vision is the claimant's uncorrected vision. *Cogan* at ¶ 16. "Neither surgical procedures (e.g., corneal transplants and lens implants) nor optical prostheses (e.g., eyeglasses and contact lenses) may be considered when determining a claimant's postinjury vision." *Id.* However, "depending on the circumstances of each case, a claimant's preinjury visual baseline may not always be his or her preinjury uncorrected vision." *Id.* at ¶ 22. As R.C. 4123.57 does not address the standard for assessing preinjury vision, the Supreme Court of Ohio has recognized that "a more flexible approach may be necessary in certain circumstances and that the commission therefore should be afforded some discretion in determining a claimant's preinjury visual baseline." *Id.* at ¶ 17.

{¶ 44} "Because the commission lacks medical expertise, claims involving medical determinations may be established only by submitting appropriate medical evidence." *Beyer* at ¶ 12. *See State ex rel. Stephenson v. Indus. Comm.*, 31 Ohio St.3d 167, 171 (1987) (stating that a claimant's impairment, meaning "the amount of a claimant's anatomical and/or mental loss of function," must be "determined by the doctors and set forth within the medical reports"). Thus, in order to establish a claim for a scheduled-loss award under R.C. 4123.57(B), a claimant is "required to submit medical evidence showing the degree of [the] visual impairment." *Beyer* at ¶ 13. "The claimant bears the burden of proving entitlement to compensation" under R.C. 4123.57(B). *State ex rel. Koepf v. Indus. Comm.*, 10th Dist. No. 18AP-753, 2019-Ohio-3789, ¶ 6, citing *State ex rel. Yellow Freight Sys., Inc. v. Indus. Comm.*, 81 Ohio St.3d 56, 57 (1998).

## C. Continuing Jurisdiction

{¶ 45} "Res judicata operates 'to preclude the relitigation of a point of law or fact that was at issue in a former action between the same parties and was passed upon by a court of competent jurisdiction.' " *State ex rel. Kroger Co. v. Indus. Comm.*, 80 Ohio St.3d 649, 651 (1998), quoting *Office of Consumers' Counsel v. Pub. Util. Comm.*, 16 Ohio St.3d 9, 10 (1985). Res judicata applies to administrative proceedings including proceedings before the commission." *State ex rel. Casey v. Indus. Comm. of Ohio,* 10th Dist. No. 20AP-247, 2022-Ohio-532, ¶ 18. However, the continuing jurisdiction of the commission under

R.C. 4123.52 limits the application of res judicata in workers' compensation matters. *State ex rel. Tantarelli v. Decapua Ents., Inc.*, 156 Ohio St.3d 258, 2019-Ohio-517, ¶ 14. *See also State ex rel. Quest Diagnostics, Inc. v. Indus. Comm.*, 10th Dist. No. 10AP-153, 2011-Ohio-78, ¶ 15 (stating that "[u]nless the claim has expired by operation of law, the commission has jurisdiction to consider issues *not previously addressed*" (Emphasis added.)).

{¶ 46} The commission's continuing jurisdiction "is itself limited and may be invoked only when there is evidence of '(1) new and changed circumstances, (2) fraud, (3) clear mistake of fact, (4) clear mistake of law, or (5) error by an inferior tribunal.' " *Tantarelli* at ¶ 15, quoting *State ex rel. Nicholls v. Indus. Comm.*, 81 Ohio St.3d 454, 458-59 (1998). "Evidence of new and changed circumstances entails evidence that 'conditions have changed subsequent to the initial award,' and not simply evidence which was 'newly acquired.' " *Casey* at ¶ 19, quoting *State ex rel. Keith v. Indus. Comm.*, 62 Ohio St.3d 139, 141-42 (1991). "The reason for the exercise of continuing jurisdiction must be articulated contemporaneously with the exercise of continuing jurisdiction." *Quest Diagnostics* at ¶ 14.

## D. Application

{¶ 47} Before considering whether Kreitzer has established entitlement to relief in mandamus, it is necessary to clarify the scope of this matter. As reflected in the stipulated record, Kreitzer filed two C-86 motions in 2022: (1) the March 15, 2022 motion requesting total loss of vision of the right eye, and (2) the June 30, 2022 motion requesting that the commission exercise continuing jurisdiction under the basis of a mistake of law in the August 18, 2008 BWC order. The record contains no orders, either from the BWC or the commission, addressing the June 30, 2022 motion for continuing jurisdiction. Kreitzer, both in his complaint and briefs, challenges only the August 3, 2022 SHO order that denied the March 15, 2022 motion. Because Kreitzer does not challenge—and the record does not contain—a final order from the commission resolving Kreitzer's June 30, 2022 motion for continuing jurisdiction, the scope of this mandamus action is limited to review of the commission's orders that resolved Kreitzer's March 15, 2022 motion.

{¶ 48} In the March 15, 2022 motion, Kreitzer requested compensation for total loss of vision—an increase from the prior award in the August 18, 2008 BWC order for a 33 percent uncorrected loss of vision. The SHO denied Kreitzer's motion because he failed to supply "sufficient medical evidence supporting that he has sustained an increase in the

loss of vision of the right eye to include the total loss of vision." (Stip. at 40.) Indeed, Kreitzer did not submit *any* new medical evidence to support the requested increase. Instead, Kreitzer relied on the April 29, 2008 operative report of Dr. Snyder, which was issued *prior* to the BWC's August 18, 2008 order granting scheduled-loss compensation. Kreitzer does not dispute that this report was in the record before the BWC at the time it issued that order—over a dozen years before Kreitzer filed his March 15, 2022 motion. As Kreitzer did not submit any new evidence, the SHO's finding that Kreitzer failed to meet his burden to demonstrate an increase in loss of vision was not in error.

{¶ 49} Nevertheless, Kreitzer asserts that the commission was required to grant his motion for total loss of vision under the Supreme Court of Ohio's decision in *AutoZone*, 2008-Ohio-541, and a decision of this court in *State ex rel. Parsec, Inc. v. Agin*, 155 Ohio App.3d 303, 2003-Ohio-6186 (10th Dist.). Based on these cases, Kreitzer argues the commission was under a duty to conclude that Kreitzer suffered a total loss of vision "once the removal of his lens occurred by means of an authorized procedure." (Kreitzer's Brief at 10.) Neither of these cases compels this conclusion.

{¶ 50} In *Parsec*, the claimant was struck in the left eye with a wire causing intraocular penetration. The injury resulted in a total traumatic cataract of the left eye. Surgery was performed to repair the injury, which included removal of the lens and the insertion of a silicone intraocular lens. The commission granted the claimant a scheduled-loss award for total loss of vision, stating that "[t]he fact that [the claimant's] vision was subsequently surgically corrected is not properly to be considered on permanent partial disability awards." *Parsec* at ¶ 16. The employer argued the claimant failed to meet his burden of proof because he did not present evidence of his visual acuity prior to the injury. This court found that "the medical evidence in the record clearly established that the work-related injury caused a traumatic cataract to occur in claimant's left eye resulting in the *complete loss of vision* in that eye." (Emphasis added.) *Id*. at ¶ 2. Furthermore, the court found "[t]here was no dispute that, in order to treat claimant's work-related injury and to restore vision in his left eye, it was necessary to remove claimant's cornea and implant an artificial one." *Id*. As a result, the court agreed the magistrate's conclusion that "the evidence showed that claimant sustained a total loss of vision in his left eye" and denied the writ. *Id*.

{¶ 51} In *Autozone*, the claimant perforated his left eye with a screwdriver while installing a wiper blade. The claimant's treating physician stated that "[i]n terms of vision loss today, [the claimant] is legally blind, 20/200 although he does have better potential for vision" and further stated that "[a]t this stage, I would say that he has lost at least 75 to 80% of his vision." *Autozone* at ¶ 4. Before the court, the employer argued that since the claimant's lens was not determined to be opaque prior to removal, the claimant should not receive the same award as in *Parsec*. The employer also argued that the claimant was only entitled to an award for partial loss of sight because the claimant's treating physician stated that the percentage of vision actually lost was at least 75 to 80 percent. However, the court noted that the treating physician concluded that the injury left the claimant "legally blind," and found that Kreitzer's vision in his injured eye was consistent with legal blindness under Ohio statutory and case law. *Id.* at ¶ 25. The court concluded that the opinions of two doctors that the claimant was rendered legally blind in his left eye due to the workplace injury constituted some evidence to support the commission's determination. Therefore, the court held that "when a doctor determines that a claimant is rendered 'legally blind' due to the loss of a lens in an industrial accident, that determination constitutes 'some evidence' that the claimant has suffered 'the loss of the sight of an eye' pursuant to R.C. 4123.57(B)." *Id.* at ¶ 18.

{¶ 52} As detailed above, *Parsec* and *Autozone* do not stand for the proposition that the commission is under a duty to grant total loss compensation based on the surgical removal of the injured lens *alone*. Instead, in *Parsec*, the court also relied on a finding that the claimant had sustained a total loss of vision prior to surgery due to the traumatic cataract. In *Autozone*, the court specifically held that a physician's finding that the claimant was legally blind constituted some evidence supporting a determination for total loss of vision.

{¶ 53} Following *Autozone*, but before Kreitzer brought his March 15, 2022 motion, the Supreme Court of Ohio expressly considered the question of "whether the surgical removal of the lens of an eye in the course of treatment for a workplace injury entitles the injured worker to compensation pursuant to R.C. 4123.57(B) for a total loss of sight." *State ex rel. Baker v. Coast to Coast Manpower, L.L.C.,* 129 Ohio St.3d 138,

2011-Ohio-2721, ¶ 1. In a split decision,[3] the court "decline[d] to adopt a bright-line rule that a claimant is entitled to an award for a total loss of vision under R.C. 4123.57(B) any time the natural lens or cornea of the eye is surgically removed as a result of a workplace injury." *Id.* at ¶ 2. The court held that it was proper to calculate loss of vision "based on the percentage of vision actually lost as a result of the injury, prior to any corrective surgery." *Id.* Furthermore, the court specifically addressed *Parsec* and *Autozone*, stating:

> *AutoZone* and *Parsec* are distinguishable from the facts in Baker's case. * * * [T]he claimants in *AutoZone* and *Parsec* both suffered major vision loss far exceeding the statutory minimum of 25 percent. It was this loss of uncorrected vision following the injury, not the loss of the lens or cornea by itself, that formed the basis for the award of compensation for a total loss of sight in the eye. Baker never experienced any such loss.

*Id.* at ¶ 19. Thus, under R.C. 4123.57(B), the court found that "loss of vision is determined by the measurement of uncorrected vision following the injury, but prior to any corrective surgery such as a lens implant or cornea transplant." *Id.* at ¶ 20.

{¶ 54} Thus, under *Parsec*, *Autozone*, and subsequent cases, there exists no bright-line rule requiring the granting of total loss of vision compensation based upon the fact that a claimant has had ocular corrective surgery, such as the surgical removal of a lens. Rather, "to establish his claim for an R.C. 4123.57(B) award, which is based on the 'percentage of vision actually lost,' " Kreitzer was "required to submit medical evidence showing the degree of [the] visual impairment." *Beyer* at ¶ 13. As Kreitzer submitted no new medical evidence demonstrating an increase in the degree of visual impairment, he was not entitled to an increase in scheduled-loss compensation for total loss of vision.

{¶ 55} Finally, Kreitzer raises a number of arguments related to Dr. Roebuck's July 25, 2008 report. Kreitzer states that he "invoked continuing jurisdiction on the basis of mistake of fact/mistake of law to put the [commission] on notice that the subsequent payment of additional scheduled loss compensation was necessary in light of evident discrepancies in spite of prior payment of the limited award in 2008." (Kreitzer's Brief at

---

[3] The lead opinion of the court in *Baker* was formed with the support of two justices and one judge sitting by assignment. Justice Cupp concurred separately, noting that he was "generally in accord with the discussion and analysis of the lead opinion," but wrote separately to "express the hope that future loss-of-use analysis will be assisted by an updated perspective of medical science as it relates to visual improvement." *Baker* at ¶ 24 (Cupp, J., concurring). Two justices joined the dissenting opinion of Justice McGee Brown.

14.) Although Kreitzer complains that the commission "blatantly ignored the evident mistake of fact/law," nothing in Kreitzer's motion or the SHO's order resolving the motion indicates that Kreitzer raised to the commission any of the issues about which he now complains concerning Dr. Roebuck's report. (Kreitzer's Brief at 14.) Kreitzer's only specific reference to a "mistake of law" occurred in his June 30, 2022 motion, which, again, is not at issue in this mandamus action. Kreitzer also did not supply a transcript of the hearing before the DHO or SHO to establish that issues concerning Dr. Roebuck's report were raised to the commission in the first instance. Mandamus will not lie to correct potential issues where such issues could have been but were not raised or addressed at the administrative level. *See State ex rel. Hodge v. Ryan*, 131 Ohio St.3d 357, 2012-Ohio-999, ¶ 6 (stating that "mandamus will not issue when an individual has a plain and adequate remedy in the ordinary course of law" and noting that "[a]dministrative remedies are plain and adequate remedies that preclude mandamus"). As there is no evidence in the record that Kreitzer attempted to invoke the continuing jurisdiction of the commission on the basis of errors in Dr. Roebuck's July 25, 2008 report, review of such issues for the first time in this mandamus action is not appropriate.[4] *See State ex rel. Std. Prods. Co. v. Indus. Comm.*, 10th Dist. No. 03AP-940, 2004-Ohio-5263, ¶ 5 (stating that the relator's motion "did not ask the commission to exercise continuing jurisdiction under R.C. 4123.52 based upon an alleged mistake of law" and "[a]s a result, we are unable to

---

[4] Although no party specifically addressed the issue in their briefs in this matter, the record is unclear regarding whether the statute of limitations in R.C. 4123.52(A) precludes the exercise of continuing jurisdiction. In 2022, the year in which Kreitzer filed both C-86 motions, R.C. 4123.52(A) provided:

> No modification or change nor any finding or award in respect of any claim shall be made with respect to disability, compensation, dependency, or benefits, after five years from the date of injury in the absence of medical benefits being provided under this chapter or in the absence of payment of compensation under section 4123.57, 4123.58, or division (A) or (B) of section 4123.56 of the Revised Code or wages in lieu of compensation in a manner so as to satisfy the requirements of section 4123.84 of the Revised Code, in which event the modification, change, finding, or award shall be made within five years from the date of the last medical services being rendered or the date of the last payment of compensation or from the date of death, nor unless written notice of claim for the specific part or parts of the body injured or disabled has been given as provided in section 4123.84 or 4123.85 of the Revised Code.

Former R.C. 4123.52. *See State ex rel. Tchankpa v. Indus. Comm. of Ohio*, ___ Ohio St.3d ___, 2024-Ohio-3430, ¶ 21 (finding arguments in support of continuing jurisdiction to be moot where motion seeking to invoke continuing jurisdiction was filed outside the five-year period within which the commission was permitted to exercise its continuing jurisdiction).

conclude that the commission abused its discretion in failing to construe the motion in the manner now sought by relator"). *See generally State ex rel. Quarto Mining Co. v. Foreman*, 79 Ohio St.3d 78, 83 (1997) (stating that requiring the commission to address a potential issue in the record that was not raised by the parties "would waste judicial and administrative resources").

**E. Conclusion**

{¶ 56} Based on the foregoing, Kreitzer has not demonstrated a clear legal right to the requested relief or that the commission is under a clear legal duty to provide such relief. Accordingly, it is the decision and recommendation of the magistrate that Kreitzer's request for a writ of mandamus should be denied.

/S/ MAGISTRATE
JOSEPH E. WENGER IV

**NOTICE TO THE PARTIES**

Civ.R. 53(D)(3)(a)(iii) provides that a party shall not assign as error on appeal the court's adoption of any factual finding or legal conclusion, whether or not specifically designated as a finding of fact or conclusion of law under Civ.R. 53(D)(3)(a)(ii), unless the party timely and specifically objects to that factual finding or legal conclusion as required by Civ.R. 53(D)(3)(b). A party may file written objections to the magistrate's decision within fourteen days of the filing of the decision.